**BOYAMIAN LAW, INC.**
Michael H. Boyamian, SBN 256107
  michael@boyamianlaw.com
Armand R. Kizirian, SBN 293992
  Armand@boyamianlaw.com
550 North Brand Boulevard, Suite 1500
Glendale, California 91203
Telephone:    (818) 547-5300
Facsimile:    (818) 547-5678

Attorneys for Plaintiffs CHRISTIAN DECENA,
HAIRON MARTINEZ, MIGUEL RIOS, and
RIGOBERTO GODOY, and all others similarly
situated

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN DECENA, an Individual, HAIRON MARTINEZ, an Individual, an Individual; MIGUEL RIOS, an Individual; RIGOBERTO GODOY, an Individual; Individually, and on Behalf of All Similarly Situated Individuals,<br><br>            Plaintiffs,<br><br>        v.<br><br>ALLEGIANT FINAL MILE INC., A Florida corporation; DIVERSE LOGISTICS & DISTRIBUTION, INC., a Florida corporation; MATTRESS FIRM, INC., a Delaware corporation; and DOES 1 through 25, Inclusive,<br><br>            Defendants. | **Case No. 4:23-cv-03633-YGR**<br><br>**CLASS ACTION**<br><br>**SECOND AMENDED COMPLAINT**<br><br>1. FAILURE TO PAY MINIMUM WAGE;<br>2. FAILURE TO PAY OVERTIME COMPENSATION;<br>3. REIMBURSEMENT OF EMPLOYMENT EXPENSES;<br>4. UNLAWFUL DEDUCTION FROM WAGES;<br>5. FAILURE TO PROVIDE MEAL PERIODS;<br>6. FAILURE TO AUTHORIZE AND PERMIT REST PERIODS;<br>7. FAILURE TO FURNISH ACCURATE WAGE STATEMENTS;<br>8. WAITING TIME PENALTIES; AND<br>9. UNFAIR COMPETITION<br>10. PRIVATE ATTORNEYS GENERAL ACT (LABOR CODE §§ 2698 ET SEQ.)<br><br>**JURY TRIAL DEMANDED** |

BOYAMIAN LAW, INC.
550 N. BRAND BLVD.,
STE 1500
GLENDALE, CA 91203

SECOND AMENDED CLASS ACTION
COMPLAINT

Plaintiffs CHRISTIAN DECENA, HAIRON MARTINEZ, MIGUEL RIOS, and RIGOBERTO GODOY ("Plaintiffs"), individually and on behalf of all similarly situated individuals, through this Second Amended Complaint ("Complaint") allege as follows:

## **GENERAL ALLEGATIONS**

1.   This is a proposed class action brought against Defendants ALLEGIANT FINAL MILE INC. ("ALLEGIANT"), DIVERSE LOGISTICS & DISTRIBUTION, INC. ("DL&D"), MATTRESS FIRM, INC. ("MFI") and DOES 1 through 25, inclusive (collectively hereinafter referred to as, "Defendants"), on behalf of Plaintiffs and all other non-employee workers who worked in California as a Contract Carrier, Driver, and/or Helper (hereinafter collectively referred to as "Delivery Drivers") for Defendants at any time from September 27, 2018[1] and continuing while this action is pending ("Class Period"), who were denied the benefits and protections required under the California Labor Code and other statutes and regulations applicable to California employees.

2.   During the Class Period, Defendants:

    a.    unlawfully misclassified Delivery Drivers as independent contractors;

    b.    failed to reimburse Delivery Drivers for necessary business expenditures;

    c.    failed to pay wages for all hours worked by Delivery Drivers;

    d.    failed to pay Delivery Drivers the applicable legal minimum wage;

    e.    failed to pay overtime wages due to Delivery Drivers;

    f.    failed to provide meal and rest periods due to Delivery Drivers;

    g.    failed to provide the Delivery Drivers with timely and accurate wage and hour statements;

    h.    failed to pay the Delivery Drivers compensation in a timely manner upon their termination or resignation;

    i.    failed to maintain complete and accurate payroll records for the Delivery Drivers;

---

[1] The statutory period here is four years and one hundred and seventy-eight days due to California Emergency Rule of Court 9(a), which tolled the applicable statute of limitations for 178 days from April 6, 2020 to October 1, 2020.

BOYAMIAN LAW, INC.
550 N. BRAND BLVD., STE 1500
GLENDALE, CA 91203

j.      wrongfully withheld wages and compensation due to the Delivery Drivers; and

k.      committed unfair business practices in an effort to increase profits and to gain an unfair business advantage at the expense of the Delivery Drivers and the public.

3.   The foregoing acts and other acts by Defendants - committed throughout California and Alameda County - violated provisions of the California Labor Code, including sections 201, 202, 203, 204, 226, 226.7, 226.8, 246, 510, 512, 515, 551, 552, 558, 1194, 1198, and 2802 (collectively, "Employment Laws"), violated the applicable Wage Orders issued by California's Industrial Welfare Commission, including Wage Order 9-2001 during the Class Period ("Regulations"), violated California's Unfair Business Practices Act, California Business & Professions Code sections 17200 *et seq*., and violated Plaintiffs' rights.

## JURISDICTION AND VENUE

4.   Venue is proper in this Judicial District and the County of Alameda because work was performed by Plaintiffs and other members of the Class for Defendants in the County of Alameda, California, and Defendants' obligations under the Employment Laws and Regulations to pay overtime wages, to provide meal and rest periods and accurate wage statements to Plaintiff and other members of the Class arose and were breached in California, including the County of Alameda.

5.   The California Superior Court has jurisdiction in this matter because Plaintiffs are residents of California, and Defendants are corporations qualified to do business in California and regularly conduct business in California.  Further, no federal question is at issue as the claims are based solely on California law.

6.   Plaintiffs are informed and believe and on that basis allege that Defendant DIVERSE LOGISTICS & DISTRIBUTION, INC., as a foreign corporation, has not designated any county in California as its principal place of business.  As such, venue is proper in any county in California.

7.   Moreover, Defendant MATTRESS FIRM, INC. removed this action to the Northern District of California pursuant to 28 U.S.C. sections 1332(d), 1441, 1446, and 1453 on July 21, 2023.

////

////

## THE PARTIES

8.   Plaintiff CHRISTIAN DECENA is, and at all relevant times was, a competent adult residing in California.

9.   Plaintiff HAIRON MARTINEZ is, and at all relevant times was, a competent adult residing in California.

10. Plaintiff MIGUEL RIOS is, and at all relevant times was, a competent adult residing in California.

11. Plaintiff RIGOBERTO GODOY is, and at all relevant times was, a competent adult residing in California.

12. Plaintiffs bring suit on behalf of themselves and all similarly situated individuals pursuant California Code of Civil Procedure section 382, and California Business & Professions Code sections 17200, *et seq*.  Plaintiffs were unlawfully classified by Defendants as independent contractors and worked as Drivers and/or Helpers out of the warehouse owned and operated by Defendants' retail customer in Livermore, California.

13. Defendant ALLEGIANT FINAL MILE INC. is, and at all relevant times was, a Florida corporation registered with the State of California's Secretary of State. ALLEGIANT provides logistics and delivery services to its retail merchants like Defendant MFI, and others, to deliver products and services to their clients' customers.  ALLEGIANT utilizes Delivery Drivers to pick up the merchandise at the merchants' stores or warehouses and to deliver and install them at the customers' homes or businesses.  ALLEGIANT is therefore a provider of managed transportation services including the planning and execution for "last mile" delivery of its retail merchant clients. ALLEGIANT has engaged in unlawful employment practices addressed in this Complaint throughout California and in Alameda County.

14. Defendant DIVERSE LOGISTICS & DISTRIBUTION, INC. is, and at all relevant times was, a Florida corporation that is not registered with the State of California's Secretary of State. Similar to ALLEGIANT's business model, DL&D is in the business of transporting freight for their customers including the completion of last-mile deliveries, by contracting directly with drivers who enter into independent contractor agreements with Defendants, to provide the trucks and equipment

to facilitate transport, and utilizing Drivers and Helpers to tender freight by Defendants through the independent contractor agreement.

15. Defendant MATTRESS FIRM, INC. is, and at all relevant times was, a Delaware corporation registered with the State of California's Secretary of State.  MFI is a retail merchant selling mattresses and related products to consumers in the state.  MFI utilizes ALLEGIANT and DL&D to complete the planning and execution of "last mile" deliveries for its customers.  MFI, through ALLEGIANT and DL&D, utilizes Delivery Drivers to pick up merchandise at MFI's stores or warehouses and to deliver and set them up at the customers' homes and businesses.  Plaintiffs assert claims against MFI in its capacity as a Client Employer pursuant to Labor Code section 2810.3.  MFI has engaged in unlawful conduct employment practices addressed in this Complaint throughout California and in Alameda County.

16. ALLEGIANT and DL&D are companies conducting business in the State of California as "Allegiant Final Mile, Inc." Defendants maintain several accounts in California for purposes of securing "last mile" delivery services for its clients and customers. Upon information and belief, both ALLEGIANT and DL&D share or are affiliated with the same management personnel.  For example, Bernard (Bernie) Skerkowski is DL&D's Chief Financial Officer but likewise is ALLEGIANT's Chief Executive Officer. Further, Victor Mraz is DL&D's Chief Operations Officer but is also ALLEGIANT's Chief Administrative Officer.  Further, both DL&D and ALLEGIANT share the same corporate offices located at 16704 Tobacco Rd in Lutz, Florida.

17. The degree of control exercised by DL&D over ALLEGIANT is enough to reasonably deem ALLEGIANT as an agent of DL&D under traditional agency principles.  ALLEGIANT can legitimately be described as only a means through which DL&D acts and conducts its nationwide business. Defendants DL&D and ALLEGIANT have such a unity of interest and ownership that the separate personalities do not in reality exist and that the corporate structure is just a shield for the alter ego of each other. Plaintiffs therefore are informed and believe and thereupon allege ALLEGIANT and DL&D, and each of them, were their employers under California law, that Defendants herein did acts consistent with the existence of an employer-employee relationship with Plaintiffs and that ALLEGIANT was owned, controlled, directly or indirectly, by DL&D.

BOYAMIAN LAW,
INC.
550 N. BRAND
BLVD., STE 1500
GLENDALE, CA
91203

-4-
**SECOND AMENDED CLASS ACTION COMPLAINT**

18. Plaintiffs are informed and believe and based thereon allege that Defendants uniformly apply their pay practices, and overtime policies to all Contract Carriers, Drivers and Driver Assistants. Plaintiffs are currently unaware of the true names and capacities of the defendants sued in this action by the fictitious names DOES 1 through 25, inclusive, and therefore sue those defendants by such fictitious names.

19. Plaintiffs will amend this Complaint to allege the true names and capacities of such fictitiously named defendants when they are ascertained.

20. Plaintiffs are informed and believe and based thereon alleges that each defendant sued in this action, including each defendant sued by the fictitious names DOES 1 through 25, inclusive, is responsible in some manner for the occurrences, controversies and damages alleged below.

21. Plaintiffs are informed and believe and based thereon allege that DOES 1 through 25, inclusive were the agents, servants and/or employees of Defendants and, in doing the things hereinafter alleged and at all times, were acting within the scope of their authority as such agents, servants and employees, and with the permission and consent of Defendants.

22. Plaintiffs are informed and believe and based thereon allege that Defendants ratified, authorized, and consented to each and all of the acts and conduct of each other as alleged herein.

23. Plaintiffs are informed and believe and based thereon allege that Defendants, and each of them, were their employers under California law, that Defendants did acts consistent with the existence of an employer-employee relationship with Plaintiffs despite their unlawful classification of Plaintiffs as independent contractors.

<u>**FACTS COMMON TO ALL CAUSES OF ACTION**</u>

24. Defendants unlawfully classified Plaintiffs and other similarly situated individuals as independent contractors when, in fact, they were heavily regulated through a series of work-related restrictions and directives through Defendants.

25. Specifically, Defendants secure truck owners and contract with such truck owners for purposes of delivering, installing, and picking up of merchandise and products to Defendants' clients' customers, such as for Defendant MFI.  These truck owners go to the warehouses of Defendants' clients, such as Defendant MFI, and go through a hiring process with Defendants'

employees who are officed at the same site. Truck owners are hired by Defendants ALLEGIANT and DL&D. Truck owners then bring on drivers and driver assistants who are also evaluated by Defendants for hiring purposes. Delivery Drivers provide "last mile" delivery, installation, and haul away services. These services are integral and essential to Defendants' core business.

26. Plaintiffs and the other Delivery Drivers typically drive only within a 150 air mile radius of Defendants' warehouses from which they operate. Moreover, Plaintiffs and the other Delivery Drivers are not required to maintain commercial drivers' licenses by Defendants, but instead may complete their work using only a California class C driver's license, i.e., utilizing trucks with a gross vehicle weight rating of 26,000 pounds or less for their deliveries.

27. Defendants' ALLEGIANT and DL&D's "Broker/Carrier Agreement" ("Agreement") with Delivery Drivers, states that the Delivery Drivers are independent contractors. The Agreements are contracts of adhesion that are drafted exclusively by Defendants and/or on its behalf by its agents. The terms of the Agreement are non-negotiable. Through the Agreement, Defendants reserve and actually exercise the right to control the manner and means by which the Delivery Drivers perform their duties for Defendants. This control is not limited to Defendants ALLEGIANT and DL&D as Defendant MFI also in practice is greatly involved in the training and expected conduct of the Delivery Drivers.

28. The Agreement is an elaborate scheme to perpetuate this fraud to misclassify Delivery Drivers as "independent contractors," when in fact and under the law they are not. The Agreement is specifically designed and intended to conceal the true nature of the employment relationship between Defendants and Delivery Drivers, which is that of an employer and employee, and to evade the provisions of California law that confer protections on employees. In particular, Defendants have devised and used the Agreement, and its sham designation of its Delivery Drivers as independent contractors, to transfer substantial costs and risks that are the responsibility of Defendants as a matter of law to its employees, in violation of California Labor Code § 2802 and other provisions of California law.

29. In addition to the various agreements that Defendants require Delivery Drivers to sign as a condition of employment, Defendants also require each driver to create his or her own

"corporation" or "limited liability company." Defendants refer these individuals to a company that processes the paperwork to create a purported corporate or limited liability company entity for each driver, and requires the drivers to go through this process. In fact, these business entities are nothing more than fictitious business names for the drivers themselves, and serve no purpose other than to perpetuate and to shield Defendants' scheme of mischaracterizing Delivery Drivers as independent contractors.

30. Defendants achieve this by requiring the Delivery Drivers to perform work exclusively under these corporate entities that they are required to form.  However, as these corporate entities are created at the direction of Defendants, their existence is to mask the pervasive control that Defendants maintain over the Delivery Drivers and the key role Delivery Drivers fulfill in Defendants' business.  Indeed, based on the hours of work that Defendants require, Plaintiffs and the other Delivery Drivers would effectively be full-time employees of Defendants were it not for their misclassification.

31. Defendants also have a series of directives that Delivery Drivers must abide by despite the fact that Defendants unlawfully classify them as independent contractors.  Defendants reserve the right to determine the locations where the Delivery Drivers pick up and drop off the merchandise assigned to them; the time of day when they must report to work; and the order and timing of their deliveries. Defendants provide each Delivery Driver a daily manifest of work assignments that includes the delivery address, the "service window" time when the delivery must be made, and whether the Delivery Driver is required to call the customer 30 minutes ahead of arrival to give notice of when he will make the delivery. The Delivery Drivers must complete all of the work assigned to them and are not allowed to refuse assignments.  Defendants reserve the right to control the Delivery Drivers' physical appearance, including requiring them to wear Defendants' uniforms. Defendants also reserve the right to require the Delivery Drivers to know and follow MFI's customer service standards in performing their work, and conduct surveys to determine whether customers are satisfied with the Delivery Drivers' work.

////

////

32. Defendants further reserve the right to require the Delivery Drivers to follow certain work methods related to, for example, how to move and install the products and how to interact with customers.  Defendants determine the year, branding, and other specifications of the vehicles that the Delivery Drivers use to perform their work. Defendants prescribe how the Delivery Drivers document their work and require the Delivery Drivers to contact Defendants upon arrival at each stop and then again after the delivery is completed.  Defendants also reserve the right to require the Delivery Drivers to call each customer 30 minutes before making the delivery to let the customers know they are on their way.  Defendants employ a variety of managerial and supervisory employees who instruct the Delivery Drivers on their job performance and their delivery assignments. The Delivery Drivers interact with Defendants' personnel on a daily basis. Defendants' managerial and supervisory employees also hold regular in-person and/or telephonic meetings where the Delivery Drivers' attendance is mandatory.

33. The Delivery Drivers who are Contract Carriers are paid each week by Defendants a flat amount for each delivery, or for each day or week of work, in amounts that are unilaterally determined by Defendants.  Defendants make deductions from the Contract Carrier Delivery Drivers' pay for reasons including customer complaints, late deliveries, and damaged items and property. This "flat rate" constitutes an unlawful piece-rate compensation system because Delivery Drivers have no control over how many hours they worked and could do nothing to change the amount of pay through their own efficiencies.

34. Defendants require the Contract Carrier Delivery Drivers to purchase multiple forms of insurance coverage in amounts determined by Defendants through insurance plans specified and sometimes negotiated by Defendants, and to name Defendants and its clients as additional "insureds." Defendants further require the Contract Carrier Delivery Drivers to purchase or rent from Defendants' clients, certain tools and equipment.

35. Defendants direct Contract Carrier Delivery Drivers, who are typically Drivers themselves, to engage Helpers to deliver the assigned merchandise. Defendants prohibits the Contract Carrier Delivery Drivers from working with Helpers who have not been screened, qualified, and approved in advance by Defendants.  Defendants expects Drivers and Helpers to follow the same work

BOYAMIAN LAW,
INC.
550 N. BRAND
BLVD., STE 1500
GLENDALE, CA
91203

-8-

SECOND AMENDED CLASS ACTION COMPLAINT

methods and standards it requires the Contract Carrier Delivery Drivers to follow and to comply with all other requirements communicated by Defendants, including attendance at meetings held by Defendants' management.  Put differently, Contract Carrier Delivery Drivers are not permitted to manage their own so-called employees their own way.  Instead all Delivery Drivers, whether they be Contract Carriers, Drivers, or Helpers, must conform to the requirements, direction, and control of Defendants.

36. Defendants permit Delivery Drivers who are Contract Carriers to engage other Drivers and/or Helpers at their own expense who have been screened, qualified, and approved by Defendants.  Delivery Drivers may engage such Drivers and/or Helpers so that they are able to take a day off from work, such as for example, when they are unable to come to work due to illness or so that they may have a day of rest. Defendants expect Drivers and/or Helpers to follow the same work methods and standards it requires the Delivery Drivers to follow and to comply with all other requirements communicated by Defendants, including following instructions given by Defendants' managers and attending mandatory meetings.

37. The Delivery Drivers are economically dependent for their financial livelihood on Defendants, and Defendants are entirely dependent on the Delivery Drivers for the retail merchandise delivery service provided by Defendants to their clients. The Delivery Drivers are terminable at will. They may be terminated upon fifteen- or thirty-days written notice without cause or immediately for alleged breaches of the broadly-worded standards and obligations described in the Agreement.

38. The Agreements typically remain in effect for one year and are automatically renewed at the end of that period for another one-year term, unless either party gives notice of termination. Most of the Delivery Drivers have worked, or did work, for Defendants for several years.  Despite Defendants' pervasive control over all aspects of its delivery service operations, including the details of the Delivery Drivers' work, Defendants have classified and treated the Delivery Drivers as "independent contractors." Defendants' classification and treatment of the Delivery Drivers as "independent contractors" rather than as "employees" is and during all relevant times has been unlawful.

BOYAMIAN LAW,
INC.
550 N. BRAND
BLVD., STE 1500
GLENDALE, CA
91203

-9-
**SECOND AMENDED CLASS ACTION COMPLAINT**

## CLASS ACTION ALLEGATIONS

39. Plaintiffs bring these claims as a class action pursuant to Code of Civil Procedure § 382 and Business and Professions Code §§ 17203 & 17204.  Plaintiffs bring this action on their own behalf and on behalf of the following class of individuals (the "Class" or "Class Members"):

> All individuals who performed delivery services for Defendants as Contract Carriers, Drivers, and/or Helpers and worked in the State of California delivering goods from Defendant MFI from September 27, 2018 and continuing while this action is pending.

40. All Delivery Drivers, i.e., Contract Carriers, Drivers, and Helpers, including Plaintiffs, are putative class members.

41. During the Class Period, by virtue of unlawfully classifying Plaintiffs and Class Members as independent contractors and compensating Class Members with a "flat rate" Defendants have routinely failed to compensate Delivery Drivers all of the wages they are due ("off-the-clock" work).

42. During the Class Period, Plaintiffs and Delivery Drivers were subject to Defendants' unlawful company practice of classifying them as independent contractors and paying them a daily flat sum of money when in fact they were subjected to the pervasive control of Defendants.  All who were subject to this unlawful classification and compensation scheme suffered damages. Defendants applied this illegal wage device uniformly to all Delivery Drivers to the disadvantage of Class Members.

43. As a result, during the Class Period, Defendants have failed to provide Drivers and Helpers with accurate wage and hour statements since the daily "flat rate" did not fully compensate Delivery Drivers for all hours worked.  Defendants have failed to provide Delivery Drivers with accurate wage and hour statements since the gross hours earned, total hours worked, all deductions made, net wages earned, and all applicable hourly rates in effect during each pay period and the corresponding number of hours worked at each hourly rate.

////

////

BOYAMIAN LAW,
INC.
550 N. BRAND
BLVD., STE 1500
GLENDALE, CA
91203

-10-
**SECOND AMENDED CLASS ACTION COMPLAINT**

1    44. During the Class Period, Plaintiff and Delivery Drivers have been required to

2  work more than eight hours per day and more than forty hours per workweek. Defendants have

3  routinely failed to compensate Delivery Drivers all of the overtime wages they are due.

4    45. During the Class Period, Defendants have failed to pay accrued wages and other

5  compensation due immediately to Delivery Drivers who were terminated, and Defendants have

6  failed to pay accrued wages and other compensation due within seventy-two hours to Delivery

7  Drivers who ended their employment.

8    46. The proposed class is ascertainable in that its members can be identified using information

9  contained in Defendants' payroll and personnel records.

10    47. <u>Numerosity</u>. The Delivery Drivers are so numerous, conservatively estimated

11  to include over 40 Delivery Drivers, that joinder of each individual Class Member would be

12  impracticable, and the disposition of their claims in a class action, rather than numerous individual

13  actions, will benefit the parties, the Court and the interests of justice.

14    48. <u>Commonality</u>. There is a well-defined community of interest in the questions of

15  law and fact involved in this action, because Defendants' failure to pay Delivery Drivers their

16  wages or afford them the protections required under the Employment Laws and Regulations affects

17  all Class Members. Common questions of law and fact predominate over questions that affect only

18  individual Delivery Drivers, because all Delivery Drivers were subject to the uniform, unlawful pay

19  practices and policies. The predominate questions of law and fact include, but are not limited to:

20        a.    Whether Defendants devised a scheme and/or plan to circumvent California

21            wage and hour laws;

22        b.    Whether Defendants' conduct was fraudulent and/or deceitful;

23        c.    Whether Defendants' conduct violated the Employment Laws and

24            Regulations; and

25             (i)    failed to compensate Plaintiffs and the Class Members

26                 for all hours worked;

27  ////

28  ////

BOYAMIAN LAW,
INC.
550 N. BRAND
BLVD., STE 1500
GLENDALE, CA
91203

-11-

**SECOND AMENDED CLASS ACTION COMPLAINT**

(ii)    failed to compensate Plaintiffs and the Class Members at the applicable and legally-mandated minimum hourly rate then in effect;

(iii)   failed to provide Plaintiffs and the Class Members with timely and accurate wage and hour statements; and

(iv)    failed to maintain complete and accurate payroll records for Plaintiffs and the Class Members;

d.    Whether Defendants' systematic acts and practices violate, *inter alia*, California Business & Professions Code section 17200, *et seq.*

49. <u>Typicality</u>.  Plaintiffs' claims are typical of those of the other Delivery Drivers because all Delivery Drivers share the same or similar employment duties and activities, all are automatically classified as independent contractors, and all have been denied the benefits and protections of the Employment Laws and Regulations in the same manner.  Since Defendants have uniformly applied the same pay practices and policies to each Delivery Driver, Plaintiffs' claims are typical of the claims of all Delivery Drivers.  Plaintiffs' claims are also typical because Plaintiffs have suffered the same damages as those suffered by all Class Members.

50. <u>Adequacy of Representation</u>.  Plaintiffs can fairly and adequately represent and protect the interests of all Delivery Drivers in that Plaintiffs do not have disabling conflicts of interest which are antagonistic to those of all other Delivery Drivers.  Plaintiffs seek no relief which is antagonistic or adverse to the other Class Members, and the infringement of their rights and the damages they have suffered are typical of all other Class Members.  Plaintiffs' counsel is competent and experienced in litigating class actions in California based on large employers' violations of the Employment Laws and Regulations.

51. As mentioned above, to the extent that any Delivery Drivers entered into any arbitration agreement with any Defendants and such agreements purport to require arbitration, such agreements are void and unenforceable.  Even if such agreements are deemed enforceable, however, class-wide arbitration is appropriate and should be utilized to obtain class-wide relief.

////

BOYAMIAN LAW, INC.
550 N. BRAND BLVD., STE 1500
GLENDALE, CA 91203

**SECOND AMENDED CLASS ACTION COMPLAINT**

52. <u>Superiority of Class Action</u>.  The nature of this action and the nature of laws available to Plaintiffs and the other Delivery Drivers in the putative Class make use of the class action a particularly efficient and effective procedure because:

    a.    For many of the Delivery Drivers, individual actions or other individual remedies would be impracticable and litigating individual actions would be too costly;

    b.    The action involves a large corporate employer or employers (Allegiant, DL&D, and MFI) and a large number of individual employees (Plaintiffs and the other Class Members), many with relatively small claims and all with common issues of law and fact;

    c.    If the Delivery Drivers are forced to bring individual lawsuits, the corporate defendants would necessarily gain an unfair advantage, the ability to exploit and overwhelm the limited resources of individual Class Members with vastly superior financial and legal resources;

    d.    The costs of individual suits would likely consume the amounts recovered;

    e.    Requiring each Class Member to pursue an individual remedy would also discourage the assertion of lawful claims by current employees of Defendants, who would be disinclined to pursue an action against their present and/or former employer due to an appreciable and justified fear of retaliation and permanent damage to their immediate and/or future employment; and

    f.    Common business practices Plaintiffs experienced are representative of those experienced by all Delivery Drivers and can establish the right of all Delivery Drivers to recover on the alleged claims.

////

////

////

BOYAMIAN LAW,
INC.
550 N. BRAND
BLVD., STE 1500
GLENDALE, CA
91203

-13-
SECOND AMENDED CLASS ACTION COMPLAINT

# FIRST CAUSE OF ACTION

## FAILURE TO PAY MINIMUM WAGE

## (CAL. LABOR CODE §§ 1182.11, 1194 ET SEQ.; IWC WAGE ORDER NO. 9;

## MINIMUM WAGE ORDER)

53.  The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference, and Plaintiff alleges as follows a claim of relief.

54. At all times relevant to this complaint, Cal. Labor Code §§ 1182.11, 1182.12, and 1197, IWC wage order No. 9, and the Minimum Wage Order were in full force and effect and required that Defendant's California nonexempt employees receive the minimum wage for all hours worked irrespective of whether nominally paid on an hourly, piece rate, or any other basis, at the rate of twelve dollars ($12) per hour for work performed up through January 1, 2020, thirteen dollars ($13) per hour for work performed up through January 1, 2021, fourteen dollars ($14) per hour for work performed up through January 1, 2022, fifteen dollars ($15) per hour for work performed up through January 1, 2023, and fifteen dollars and fifty cents ($15.50) thereafter.

55. Defendants failed to pay Plaintiffs and putative class members for all hours worked at the statutory minimum wage rate, as required by law, including for work time spent at mandatory meetings; work time spent waiting to receive assignments and merchandise at Defendant's client's stores or warehouses; work time spent picking up and transporting "haul away" merchandise; and work time spent driving and returning paperwork to Defendants' client's warehouse at the end of the workday.

56. At various times throughout the relevant statutory period, Defendants have caused Plaintiff and putative class members to incur expenses and deductions that contributed to Defendants' failing to pay minimum wages for all hours worked, as required by law.

57. As a direct and proximate result of the acts and/or omissions of Defendants, Plaintiff and putative class members have been deprived of minimum wages due in amounts to be determined at trial, and to additional amounts as liquidated damages, pursuant to Cal. Labor Code §§ 1194 and 1194.2.

////

BOYAMIAN LAW,
INC.
550 N. BRAND
BLVD., STE 1500
GLENDALE, CA
91203

-14-
SECOND AMENDED CLASS ACTION COMPLAINT

1    58. By violating Cal. Labor Code §§ 1182.11, 1182.12, and 1197, IWC wage order No.

2    9, § 4, and the Minimum Wage Order, Defendants are also liable for civil penalties, interest and

3    reasonable attorneys' fees and costs under Cal. Labor Code §§ 558, 1194, 1197.1.

4    59. Plaintiffs request relief as described below.

5    <u>**SECOND CAUSE OF ACTION**</u>

6    **FAILURE TO PAY OVERTIME COMPENSATION**

7    **(CAL. LABOR CODE §§ 510, 1194 ET SEQ.; IWC WAGE ORDER NO. 9.)**

8    60.  The allegations of each of the preceding paragraphs are realleged and incorporated

9    herein by reference, and Plaintiffs allege as follows a claim of relief.

10   61. Defendants have been required, pursuant to Cal. Labor Code § 510 and IWC wage order No.

11   9, § 3, to pay Plaintiffs and putative class members overtime compensation at a rate of 1.5 times

12   their regular rates of pay for all hours worked in excess of eight in a day and in excess of 40 in a

13   week, and at a rate of two times their regular rates of pay for all hours worked in excess of 12 in a

14   day.

15   62. Defendants failed to pay Plaintiffs and putative class members daily or weekly overtime

16   compensation in violation of Cal. Labor Code § 510 and IWC wage order No. 9, § 3.

17   63. Plaintiff and putative class members as "last mile" delivery drivers are deemed "short haul"

18   operators or drivers within the meaning of 49 C.F.R. § 395.1(e)(1) and (e)(2) and are thus exempt

19   from the Federal Motor Carrier Safety Administration regulations.

20   64. As a result of Defendants' unlawful acts, Plaintiffs and putative class members have

21   been deprived of overtime compensation in an amount to be determined at trial, and are entitled to

22   recovery of such amounts, plus interest thereon, and attorneys' fees and costs, under Cal. Labor

23   Code § 1194.

24   65. By violating Cal. Labor Code § 510, Defendants are liable for civil penalties and

25   attorneys' fees and costs under Cal. Labor Code §§ 558, 1194, and 1197.1.

26   66. Plaintiffs request relief as described below.

27   ////

28   ////

BOYAMIAN LAW,
INC.
550 N. BRAND
BLVD., STE 1500
GLENDALE, CA
91203

-15-
**SECOND AMENDED CLASS ACTION COMPLAINT**

1

2

3

4

**THIRD CAUSE OF ACTION**

**REIMBURSEMENT OF EMPLOYMENT EXPENSES**

**(CAL. LABOR CODE § 2802)**

5
6

67. The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference, and Plaintiffs allege as follows a claim of relief.

7
8
9
10
11

68. Cal. Labor Code § 2802 provides: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer . . . . [which includes] all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section."

12
13
14
15
16
17
18
19
20
21
22

69. As a direct consequence of discharging their duties for Defendants and/or obeying Defendants' directions, Plaintiffs and putative class members have necessarily incurred expenses for which they have not been indemnified by Defendants, including the purchase and/or lease and depreciation of vehicles, fuel, maintenance, and other vehicle operating costs; various forms of insurance; wages paid to Delivery Drivers; costs associated with lost or damaged merchandise and other property damage; Defendants proprietary uniforms; certain tools and equipment Defendants have required Plaintiffs and class members to purchase or rent from Defendants' clients; other miscellaneous equipment including moving pads and blankets, dollies, hand tools, installation supplies, GPS navigational equipment, and cellular telephones; fees for payroll administration services; expenses associated with a cash bond or fund; and the attorneys' fees incurred to enforce Plaintiffs' and putative class members' rights under Cal. Labor Code § 2802.

23
24

70. Defendants have failed to indemnify or in any manner reimburse Plaintiffs and putative class members for these expenditures and losses.

25
26
27
28

71. By requiring Plaintiffs and putative class members to pay expenses and cover losses that they incurred in direct consequence of the discharge of their duties for Defendants and/or in obedience of Defendants' direction, Defendants have violated and continues to violate Cal. Labor Code § 2802.

BOYAMIAN LAW,
INC.
550 N. BRAND
BLVD., STE 1500
GLENDALE, CA
91203

-16-
**SECOND AMENDED CLASS ACTION COMPLAINT**

72. As a direct and proximate result of Defendants' conduct, Plaintiffs and putative class members have suffered substantial losses according to proof, as well as pre-judgment interest, costs, and attorneys' fees for the prosecution of this action, which losses are compensable under Cal. Labor Code §2802.

73. Plaintiffs request relief as described below.

**FOURTH CAUSE OF ACTION**

**UNLAWFUL DEDUCTIONS FROM WAGES**

**(CAL. LABOR CODE §§ 221 & 223; IWC WAGE ORDER NO. 9)**

74. The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference, and Plaintiff alleges as follows a claim of relief.

75. Cal. Labor Code § 221 provides: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

76. Cal. Labor Code § 223 provides: "Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract."

77. IWC wage order No. 9, § 8 provides that the only circumstance under which an employer can make a deduction from an employee's wage due to cash shortage, breakage, or loss of equipment is if the employer can show that the shortage, breakage, or loss was the result of the employee's gross negligence or dishonest or willful act.

78. These and related statutes, along with California's fundamental public policy protecting wages and wage scales, prohibit employers from subjecting employees to unanticipated or unpredicted reductions in their wages; making employees the insurers of their employer's business losses; otherwise passing the ordinary business losses of the employer onto the employee; taking deductions from wages for business losses in any form unless the employer can establish that the loss was caused by a dishonest or willful act, or gross negligence of the employee; or taking other unpredictable deductions that may impose a special hardship on employees.

////

BOYAMIAN LAW,
INC.
550 N. BRAND
BLVD., STE 1500
GLENDALE, CA
91203

-17-

79. Defendants have violated Cal. Labor Code §§ 221 and 223 and IWC wage order No. 9, § 8 by unlawfully taking deductions from Plaintiffs' and putative class members' compensation to cover certain ordinary business expenses of Defendants, including various forms of insurance; uniforms; payment services; equipment and tools; losses associated with lost or damaged merchandise and other property damage; gift cards and other payments given or reimbursed to customers who complain or are dissatisfied with service they received; and "charge-back" items Defendants claim to reserve the right to deduct from Plaintiff's and putative class members' pay.

80. Defendants have further violated Cal. Labor Code §§ 221 and 223 and IWC wage order No. 9, § 8 by unlawfully taking deductions from Plaintiffs' and putative class members' compensation for the purpose of establishing a reserve account to draw upon to cover ordinary business expenses, including compensation to customers complaining of damages to their merchandise or to their homes.

81. Because Defendants made unlawful deductions from Plaintiffs' and putative class members' compensation, they are liable to Plaintiff and putative class members for the compensation that should have been paid but for the unlawful deductions, pursuant to Cal. Labor Code §§ 221 and 223 and IWC wage order No. 9, § 8.

82. By unlawfully deducting wages and failing to pay Plaintiffs and putative class members, Defendants are also liable for penalties, interest and reasonable attorneys' fees and costs under Cal. Labor Code §§ 218.5 and 1194.

83. Plaintiffs request relief as described below.

## FIFTH CAUSE OF ACTION

### FAILURE TO PROVIDE MEAL PERIODS

### (CAL. LABOR CODE §§ 226.7, 512; IWC WAGE ORDER NO. 9)

84. The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference, and Plaintiffs allege as follows a claim of relief.

85. Plaintiffs and putative class members have regularly worked in excess of five (5) hours in a workday without being provided at least a half-hour meal period in which they were relieved of all duties, as required by Cal. Labor Code §§ 226.7 and 512, and IWC Wage Order No.

9, § 11(A).

86. Because Defendants failed to provide proper meal periods, they are liable to Plaintiffs and putative class members for one hour of additional pay at the regular rate of compensation for each workday that the proper meal periods were not provided, pursuant to Cal. Labor Code § 226.7(b) and IWC wage order No. 9, § 11(B).

87. By violating Cal. Labor Code §§ 226.7 and 512, and IWC wage order No. 9, §11, Defendants are also liable for penalties, reasonable attorneys' fees, and costs under Cal. Labor Code §§ 218.5 and 1194.

88. Plaintiffs and putative class members as "last mile" delivery drivers are deemed "short haul" operators or drivers within the meaning of 49 C.F.R. § 395.1(e)(1) and (e)(2) and are thus exempt from the Federal Motor Carrier Safety Administration regulations.

89. Plaintiffs request relief as described below.

## SIXTH CAUSE OF ACTION

### FAILURE TO AUTHORIZE AND PERMIT REST PERIODS

### (CAL. LABOR CODE § 226.7; IWC WAGE ORDER NO. 9)

90. The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference, and Plaintiffs allege as follows a claim of relief.

91. Plaintiffs and putative class members have regularly worked in excess of four (4) hours in a workday without Defendants' authorizing and permitting them to take at least a ten minute rest period, as required by Cal. Labor Code § 226.7 and IWC wage order No. 9, § 12.

92. Because Defendants failed to authorize and permit proper rest periods, Defendants are liable to Plaintiffs and putative class members for one hour of additional pay at the regular rate of compensation for each workday that the proper rest periods were not authorized and permitted, pursuant to Cal. Labor Code § 226.7(b) and IWC wage order No. 9, § 12(B).

93. By violating Cal. Labor Code §§ 226.7 and 512, and IWC wage order No. 9, §11, Defendants are also liable for penalties, reasonable attorneys' fees, and costs under Cal. Labor Code §§ 218.5 and 1194.

////

BOYAMIAN LAW,
INC.
550 N. BRAND
BLVD., STE 1500
GLENDALE, CA
91203

-19-

SECOND AMENDED CLASS ACTION COMPLAINT

94. Plaintiffs and putative class members as "last mile" delivery drivers are deemed "short haul" operators or drivers within the meaning of 49 C.F.R. § 395.1(e)(1) and (e)(2) and are thus exempt from the Federal Motor Carrier Safety Administration regulations.

95. Plaintiffs request relief as described below.

**SEVENTH CAUSE OF ACTION**

**FAILURE TO FURNISH ACCURATE WAGE STATEMENTS**

**(CAL. LABOR CODE §§ 226, 226.3; IWC WAGE ORDER NO. 9)**

96. The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference, and Plaintiffs allege as follows a claim of relief.

97. Cal. Labor Code § 226(a) and IWC wage order No. 9, § 7(B) require employers semi-monthly or at the time of each payment of wages to furnish each California employee with a statement itemizing, among other things, the total hours worked by the employee. Cal. Labor Code § 226(b) provides that if an employer knowingly and intentionally fails to provide a statement itemizing, among other things, the total hours worked by the employee, then the employee is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial violation and one hundred dollars ($100) for each subsequent violation, up to four thousand dollars ($4,000).

98. Defendants knowingly and intentionally failed to furnish Plaintiffs and putative class members with timely, itemized statements that accurately report the total hours worked, as required by Cal. Labor Code § 226(a) and IWC wage order No. 9, § 7(B). As a result, Defendants are liable to Plaintiffs and putative class members for the amounts provided by Cal. Labor Code § 226(b), including an award of costs and reasonable attorneys' fees.

99. Plaintiffs request relief as described below.

////

////

////

////

////

////

BOYAMIAN LAW, INC. 550 N. BRAND BLVD., STE 1500 GLENDALE, CA 91203

-20-

**SECOND AMENDED CLASS ACTION COMPLAINT**

## EIGHTH CAUSE OF ACTION

## WAITING TIME PENALTIES

## (CAL. LABOR CODE §§ 201, 202, 203)

100.     The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference, and Plaintiffs allege as follows a claim of relief.

101.     Cal. Labor Code § 201 requires an employer who discharges a California employee to pay  all compensation due and owing to that employee immediately upon discharge.

102.     Cal. Labor Code § 202 requires an employer to pay all compensation due and owing to a California employee who quits within 72 hours of that employee's quitting, unless the employee provides at least 72 hours' notice of quitting, in which case all compensation is due at the end of the employee's final day of work.

103.     Cal. Labor Code § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge, as required by § 201 or § 202, then the employer is liable for waiting time penalties in the form of continued compensation of up to 30 work days.

104.     Defendants willfully failed to timely pay compensation and wages, including unpaid minimum wage, unpaid overtime pay, unreimbursed expenses and unreimbursed reserve accounts, unpaid premium pay for missed meal periods, and unpaid premium pay for missed rest periods to Plaintiffs and similarly situated putative class members no longer in Defendants' employ, upon termination of their employment. As a result, Defendants are liable to Plaintiffs and similarly situated putative class members for waiting time penalties, together with interest thereon and reasonable attorneys' fees and costs, under Cal. Labor Code §§ 203 and 256.

105.     Plaintiffs request relief as described below.

////

////

////

////

////

BOYAMIAN LAW,
INC.
550 N. BRAND
BLVD., STE 1500
GLENDALE, CA
91203

-21-

SECOND AMENDED CLASS ACTION COMPLAINT

## <u>NINTH CAUSE OF ACTION</u>

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION ACT

### (CAL. BUSINESS & PROFESSIONS CODE §§ 17200-17209)

106.    The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference, and Plaintiffs allege as follows a claim of relief.

107.    California Business & Professions Code § 17200 prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business act or practice.

108.    California Business & Professions Code § 17204 allows "any person acting for the interests of itself, its members or the general public" to prosecute a civil action for violation of the Unfair Competition Law.

109.    Beginning at an exact date unknown to Plaintiffs, but at least four years prior to the filing of this action, Defendants committed unlawful, unfair, and/or fraudulent business acts and practices as defined by California Business & Professions Code § 17200, by engaging in the following:

    a.    Failing to pay California minimum wage and overtime compensation to Plaintiffs and putative class members;

    b.    Failing to provide adequate off-duty meal periods to Plaintiffs and putative class members, and failing to pay them premium pay for missed meal periods;

    c.    Failing to authorize and permit adequate rest periods to Plaintiffs and putative class members, and failing to pay them premium pay for missed rest periods;

    d.    Failing to indemnify Plaintiffs and putative class members for employment-related business expenses and losses;

    e.    Improperly and unlawfully making deductions from Plaintiffs' and putative class members' compensation to cover certain ordinary business expenses and losses of Defendants, which were not attributable to Plaintiffs' and putative class members' dishonest or willful act, or to their gross negligence, as described above;

////

BOYAMIAN LAW, INC.
550 N. BRAND BLVD., STE 1500
GLENDALE, CA 91203

**SECOND AMENDED CLASS ACTION COMPLAINT**

f.   Improperly and unlawfully demanding a cash bond from Plaintiffs and putative class members, and making deductions from such bonds in violation of the Employee Bond Law, Cal. Labor Code §§ 400-410;

g.   Coercing or compelling Plaintiff and putative class members to patronize Defendants' clients by requiring Delivery Drivers to purchase or rent certain tools and equipment from Defendants' clients;

h.   Failing to maintain workers' compensation insurance covering Plaintiffs and putative class members, requiring Plaintiffs and putative class members to purchase workers' compensation insurance for themselves, and failing to pay compensation to Plaintiffs and putative class members injured on the job;

i.   Failing to contribute to the Unemployment Trust Fund on behalf of Plaintiffs and putative class members;

j.   Failing to pay all wages due upon termination of employment to Plaintiffs and similarly situated putative class members no longer in Defendants' employ;

k.   Failing to provide accurate itemized wage statements to Plaintiffs and putative class members;

l.   Failing to keep accurate payroll records noting the actual hours worked by Plaintiffs and putative class members, in violation of Cal. Labor Code § 1174 and IWC wage order No. 9, § 7(A);

m.   Failing to pay all wages for labor performed between the 1st and 15th days of the month between the 16th and the 26th day of the month during which the labor was performed, and failing to pay all wages for labor performed between the 16th and the last day of the month between the 1st and 10th day of the following month, as required by Cal. Labor Code § 204;

n.   Willfully misclassifying Plaintiffs and putative class members as "independent contractors" in violation of the California Employee Misclassification Act, Cal. Labor Code § 226.8;

////

**SECOND AMENDED CLASS ACTION COMPLAINT**

BOYAMIAN LAW, INC. 550 N. BRAND BLVD., STE 1500 GLENDALE, CA 91203

1      o.    Failing to provide Plaintiffs and putative class members paid sick leave as required

2          by Cal. Labor Code § 246; and

3      P.    Intentionally, recklessly and/or negligently misrepresenting to Plaintiffs and

4          putative class members the true nature of their employment status.

5    110.    The violations of these laws serve as unlawful, unfair, and/or fraudulent predicate

6 acts and practices for purposes of Business & Professions Code § 17200.

7    111.    As a direct and proximate result of Defendants' unlawful, unfair, and/or fraudulent

8 acts and practices described herein, Defendants have received and continue to hold ill-gotten gains

9 belonging to Plaintiffs and putative class members. As a direct and proximate result of

10 Defendants' unlawful business practices, Plaintiffs and putative class members have suffered

11 economic injuries including, but not limited to out-of-pocket business expenses, unlawful

12 deductions from compensation, loss of minimum wage and overtime wages, compensation for

13 missed meal periods, compensation for missed rest periods, loss of unemployment insurance

14 benefits, loss of amounts paid into cash bonds and interest thereon, waiting time penalties, and

15 attorneys' fees and costs incurred to enforce their rights, including their rights under Cal. Labor

16 Code § 2802.  Defendants have profited from its unlawful, unfair, and/or fraudulent acts and

17 practices in the amount of those business expenses, improper deductions from compensation,

18 unpaid minimum wage and overtime, unpaid compensation for missed meal periods and missed rest

19 periods, unpaid unemployment insurance and workers' compensation premiums, cash bond

20 payments, and interest accrued.

21    112.    Plaintiffs and putative class members are entitled to restitution pursuant to Cal.

22 Business & Professions Code §§ 17203 and 17208 for all unpaid business expenses, unlawful

23 deductions from compensation, minimum wage, overtime, meal period and rest period

24 compensation, unemployment insurance and workers' compensation premiums, cash bond

25 payments, unpaid waiting time penalties, interest since four years prior to the filing of this action,

26 and attorney's fees and costs Plaintiffs have incurred to enforce these rights, including their rights

27 under Cal. Labor Code § 2802.

28 ////

BOYAMIAN LAW,
INC.
550 N. BRAND
BLVD., STE 1500
GLENDALE, CA
91203

-24-
**SECOND AMENDED CLASS ACTION COMPLAINT**

113.    Plaintiffs and putative class members are entitled to enforce all applicable penalty provisions of the California Labor Code pursuant to Business & Professions Code § 17202.

114.    By all of the foregoing alleged conduct, Defendants have committed, and are continuing to commit, ongoing unlawful, unfair and fraudulent business practices within the meaning of Cal. Business & Professions Code §17200 *et seq.*

115.    As a direct and proximate result of the unfair business practices described above, Plaintiff and putative class members have suffered significant losses and Defendants have been unjustly enriched.

116.    Pursuant to Cal. Business & Prof. Code §17203, Plaintiffs are entitled to: (a) restitution of money acquired by means of its unfair business practices, in amounts not yet ascertained but to be ascertained at trial; (b) injunctive relief against Defendants' continuation of its unfair and unlawful business practices; and (c) a declaration that Defendants' business practices are unfair and unlawful within the meaning of the statute.

117.    Plaintiff assumed the responsibility of enforcement of the laws and lawful claims specified herein.  There is a financial burden incurred in pursuing this action which is in the public interest. Therefore, reasonable attorneys' fees are appropriate pursuant to Cal. Code of Civil Procedure § 1021.5.

118.    Plaintiffs request relief as described below.

## TENTH CAUSE OF ACTION

### PRIVATE ATTORNEYS GENERAL ACT

### (LABOR CODE §§ 2698 *et seq.*)

119.    As a separate and distinct cause of action, Plaintiffs complain and reallege all of the allegations contained in this complaint and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action. Plaintiffs are aggrieved employees as defined in Labor Code § 2699 (a).  Plaintiffs bring this cause on behalf of themselves, and other current or former employees affected by the labor law violations alleged in this complaint.

////

BOYAMIAN LAW,
INC.
550 N. BRAND
BLVD., STE 1500
GLENDALE, CA
91203

-25-

**SECOND AMENDED CLASS ACTION COMPLAINT**

120.    Defendants, at all times relevant to this complaint, were employers or persons acting on behalf of an employer who violated Plaintiffs' rights by violating relevant sections of the California Labor Code and are subject to civil penalties.

121.    Defendants committed the following violations of the Labor Code against Plaintiffs, and, on information and belief, against other current or former employees while they were employed by Defendants:

(a)    Defendants violated Labor Code §§ 201-203 by failing to pay all wages due on the date of the employee's involuntary termination or within 72 hours of the employee's voluntary termination.

(b)    Defendants violated Labor Code § 204 by failing to pay all wages due at least twice during each calendar month, in compliance with those provisions.

(c)    Defendants violated Labor Code § 216 by, having the ability to pay, willfully refusing to pay wages due and payable after demand has been made.

(d)    Defendants violated Labor Code § 226 by failing to provide accurate itemized wage statements.

(e)    Defendants violated Labor Code § 510 and provisions of the applicable IWC Wage Order by failing to compensate Class Members, including Plaintiffs, at one and one-half times the regular rate of pay for any work in excess of eight hours in a day and 40 hours in a week.

(f)    Defendants violated Labor Code §§ 226.7 and 512 by failing to provide meal and rest periods compliant with California law.

(g)    Defendants violated Labor Code § 1174 by failing to maintain payroll records showing the daily hours worked.

(h)    Defendants violated Labor Code §§ 1194 and 1197 and provisions of the applicable IWC Wage Order by failing to pay the legal minimum wage.

(i)    Defendants violated Labor Code § 226.8 by misclassifying Class Members, including Plaintiffs, as independent contractors and depriving them of the benefits and protections

BOYAMIAN LAW,
INC.
550 N. BRAND
BLVD., STE 1500
GLENDALE, CA
91203

-26-
**SECOND AMENDED CLASS ACTION COMPLAINT**

of the California Labor Code and rights customarily afforded to employees in the state of California.

122.    As set forth above, Plaintiffs provided written notice on or about March 24, 2023, by certified mail to the Labor and Workforce Development Agency and to Defendants ALLEGIANT and DL&D of the facts and theories regarding the violations of the Employment Laws and Regulations.  On or about May 31, 2023, Plaintiffs provided an amended notice to the Labor and Workforce Development Agency, by certified mail, naming Defendant MFI as an additional employer to Plaintiffs' claim.  Attached as **Exhibit "1"** is a true and correct copy of the letter sent to the LWDA and Defendants on or about May 31, 2023.  More than sixty-five days have elapsed since Plaintiffs' submission to the LWDA.  The LWDA has not taken any action, nor advised Plaintiffs that it intends to take action, to investigate the violations of the California Labor Code alleged herein and has not provide any written notice.

123.    Pursuant to PAGA, Plaintiffs should be awarded twenty-five percent (25%) of all penalties due under California law, including attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all Delivery Drivers, pray that the Court enter judgment in their favor and against Defendants as follows:

1.    For an Order requiring and certifying the First through Ninth Causes of Action as a class action;

2.    For an Order that the Tenth Causes of Action (PAGA) be maintained as a representative action;

2.    For an Order appointing Plaintiffs' counsel as Class Counsel;

3.    For compensatory damages in an amount to be ascertained at trial;

4.    For restitution in an amount to be ascertained at trial;

5.    For punitive damages in an amount to be ascertained at trial;

6.    For penalties as required by the applicable Wage Order or otherwise by law;

7.    For prejudgment interest at the legal rate pursuant to California Labor Code section 218.6 and other applicable sections;

BOYAMIAN LAW,
INC.
550 N. BRAND
BLVD., STE 1500
GLENDALE, CA
91203

-27-

**SECOND AMENDED CLASS ACTION COMPLAINT**

1    8.    For reasonable attorney's fees pursuant to California Labor Code § 1194;

2    9.    For cost of suit incurred herein;

3    10.    For disgorgement of profits garnered as a result of Defendants' unlawful failure to

4  reimburse necessary business expenditures and costs, to pay overtime premium compensation and

5  for meal and rest period compensation; and

6    11.    For such further relief as the Court may deem appropriate.

7  DATED: June 14, 2024                **BOYAMIAN LAW, INC.**

8

9

10                                    By:    _____

11                                    Michael H. Boyamian
                                      Armand R. Kizirian

12                                    Attorneys for Plaintiffs CHRISTIAN
                                      DECENA, HAIRON MARTINEZ,
                                      MIGUEL RIOS, and RIGOBERTO

13                                    GODOY and All Others Similarly Situated

14

15                          **<u>DEMAND FOR JURY TRIAL</u>**

16        Plaintiffs CHRISTIAN DECENA, HAIRON MARTINEZ, MIGUEL RIOS, and

17  RIGOBERTO GODOY, individually and on behalf of all similarly situated individuals, demand

18  jury trial of this matter.

19
  DATED: June 14, 2024                **BOYAMIAN LAW, INC.**
20

21

22

23                                    By:    _____

24                                    Michael H. Boyamian
                                      Armand R. Kizirian
                                      Attorneys for Plaintiffs CHRISTIAN

25                                    DECENA, HAIRON MARTINEZ, MIGUEL
                                      RIOS, and RIGOBERTO GODOY and All

26                                    Others Similarly Situated

27

28

BOYAMIAN LAW,
INC.
550 N. BRAND
BLVD., STE 1500
GLENDALE, CA
91203

-28-
**SECOND AMENDED CLASS ACTION COMPLAINT**

Exhibit "1"



# BOYAMIAN LAW

May 31, 2023

**SUBMITTED VIA ONLINE SUBMISSION**

Labor and Workforce Development Agency
Attention: PAGA Administrator
455 Golden Gate Avenue, 9th Floor
San Francisco, California 94102

> Re:   *Decena, et al. adv. Allegiant Final Mile Inc., et al.*
>        Amended Notice of PAGA Claims Pursuant to Labor Code § 2699.3
>        Case No. LWDA-CM-944354-23

To Whom It May Concern:

My office represents Christian Decena, Hairon Martinez, Miguel Rios, and Rigoberto Godoy (hereinafter "Claimants"), with respect to claims on behalf of themselves and other similarly situated current and former Contract Carriers, Drivers and Driver Assistants (commonly referred to as "Helpers") (collectively, hereinafter referred to as "Delivery Drivers") of Allegiant Final Mile Inc. and Diverse Logistics & Distribution, Inc. (collectively "Allegiant") and Mattress Firm, Inc. ("MFI") who worked in California from March 31, 2022 and continuing to the present ("Relevant Time Period"). The purpose of this letter is to satisfy the notice requirements of Labor Code § 2699.3(a).

Below we set forth the facts and theories which we believe support our contention that Allegiant has violated and continues to violate various provisions of the California Labor Code including, but not limited to, the misclassification of Delivery Drivers, including assistant drivers and helpers, and the resulting failures by Allegiant to pay minimum wages and overtime wages, to provide meal and rest periods, and to reimburse for necessary business expenditures.

The purpose of this amended letter is to specific the facts and theories which we believe support our contention that MFI has also violated and continues to violate the California Labor Code, as set forth above, along with Allegiant.

## Facts & Theories About the Case

Allegiant and MFI have violated California's labor laws with respect to paying its Contract Carriers, Drivers and Helpers Christian Decena, Hairon Martinez, Miguel Rios, and Rigoberto Godoy for all hours worked, including overtime payment, among other things. Allegiant provides logistics and delivery services to its retail merchants like MFI, and others, to deliver products and services to their clients' customers. Allegiant utilizes Delivery Drivers, including assistant drivers and helpers, to pick up the merchandise at the merchants' stores or warehouses and to deliver and install them at the customers' homes or businesses. Delivery Drivers, including assistant drivers and helpers, are

responsible for, among other things, maintaining quality control, delivering purchased products to customers at their place of work or residence, and ensuring that customer service is achieved in accordance to the standards set by Allegiant and MFI.

Our investigation has revealed that Allegiant and MFI unlawfully classifies their Delivery Drivers, including assistant drivers and helpers, as independent contractors when, in fact, they are heavily regulated through a series of restrictions and directives through Allegiant and MFI. Specifically, Allegiant secures truck owners and contracts with such truck owners for purposes of delivering, installing, and picking up of merchandise and products for MFI. These truck owners go to the warehouses of MFI and go through a hiring process with Allegiant's and MFI's employees who are officed at the same site. Truck owners are hired by Allegiant. Truck owners then bring on drivers and driver assistants who are also evaluated by Allegiant and MFI for hiring purposes. Delivery Drivers provide "last mile" delivery, installation, and haul away services. These services are integral and essential to Allegiant's and MFI's core business.

Allegiant's "Broker/Carrier Agreement" ("Agreement") with Delivery Drivers, states that the Delivery Drivers are independent contractors. The Agreements are contracts of adhesion that are drafted exclusively by Allegiant and/or on its behalf by its agents. The terms of the Agreement are non-negotiable. Through this agreement, Allegiant reserves and actually exercises the right to control the manner and means by which the Delivery Drivers perform their duties for Allegiant. This control is not limited to Allegiant as MFI also in practice is greatly involved in the training and expected conduct of the Delivery Drivers.

The Agreement is an elaborate scheme to perpetuate this fraud to misclassify Delivery Drivers as "independent contractors," when in fact and under the law they are not. The Agreement is specifically designed and intended to conceal the true nature of the employment relationship between Allegiant and MFI, and Delivery Drivers, which is that of an employer and employee, and to evade the provisions of California law that confer protections on employees. In particular, Allegiant and MFI have devised and used the Agreement, and its sham designation of its Delivery Drivers as independent contractors, to transfer substantial costs and risks that are the responsibility of Allegiant and MFI as a matter of law to its employees, in violation of California Labor Code § 2802 and other provisions of California law.

In addition to the various agreements that Allegiant and MFI requires Delivery Drivers to sign as a condition of employment, Allegiant and MFI also requires each driver to create his or her own "corporation" or "limited liability company." Allegiant and MFI refers these individuals to a company that processes the paperwork to create a purported corporate or limited liability company entity for each driver, and requires the drivers to go through this process. In fact, these business entities are nothing more than fictitious business names for the drivers themselves, and serve no purpose other than to perpetuate and to shield Allegiant's and MFI's scheme of mischaracterizing Delivery Drivers as independent contractors.

     Allegiant and MFI have a series of directives that Delivery Drivers, including assistant drivers and helpers, must abide by despite the fact that Allegiant and MFI unlawfully classify them as independent contractors.  Allegiant and MFI reserve the right to determine the locations where the Delivery Drivers pick up and drop off the merchandise assigned to them; the time of day when they must report to work; and the order and timing of their deliveries. Allegiant and MFI provide each Delivery Driver a daily manifest of work assignments that includes the delivery address, the "service window" time when the delivery must be made, and whether the Delivery Driver is required to call the customer 30 minutes ahead of arrival to give notice of when they will make the delivery.  The Delivery Drivers must complete all of the work assigned to them and are not allowed to refuse assignments.  Allegiant and MFI reserve the right to control the Delivery Drivers' physical appearance, including requiring them to wear Allegiant and MFI uniforms. Allegiant and MFI also reserve the right to require the Delivery Drivers to know and follow MFI's service standards in performing their work, and conduct surveys to determine whether customers are satisfied with the Delivery Drivers' work.

     Allegiant and MFI further reserve the right to require the Delivery Drivers, including assistant drivers and helpers, to follow certain work methods related to, for example, how to move and install the mattresses and how to interact with customers. Allegiant and MFI determine the year, branding, and other specifications of the vehicles that the Delivery Drivers use to perform their work. Allegiant and MFI prescribe how the Delivery Drivers document their work and require the Delivery Drivers to contact Allegiant and MFI upon arrival at each stop and then again after the delivery is completed.  Allegiant and MFI also reserve the right to require the Delivery Drivers to call each customer 30 minutes before making the delivery to let the customers know they are on their way.  Allegiant and MFI employ a variety of managerial and supervisory employees who instruct the Delivery Drivers on their job performance and their delivery assignments. The Delivery Drivers interact with Allegiant's and MFI's personnel on a daily basis. Allegiant's and MFI's managerial and supervisory employees also hold regular in-person and/or telephonic meetings where the Delivery Drivers' attendance is mandatory.

     The Delivery Drivers are paid each week by Allegiant a flat amount for each delivery, or for each day or week of work, in amounts that are unilaterally determined by Allegiant and MFI.  Allegiant and MFI make deductions from the Delivery Drivers' pay for reasons including customer complaints, late deliveries, and damaged items and property.  This "flat rate" constitutes an unlawful piece-rate compensation system because drivers and helpers had no control over how many hours they worked and could do nothing to change the amount of pay through their own efficiencies.

     Allegiant and MFI require the Delivery Drivers to purchase multiple forms of insurance coverage in amounts determined by Allegiant and MFI through insurance plans specified and sometimes negotiated by Allegiant and MFI, and to name Allegiant

and MFI as additional "insureds." Allegiant and MFI further require the Delivery Drivers to purchase or rent from MFI certain tools and equipment.

Allegiant and MFI directs Delivery Drivers to engage helpers to deliver the assigned merchandise. Allegiant and MFI prohibits the Delivery Drivers from working with helpers who have not been screened, qualified, and approved in advance by Allegiant and MFI. Allegiant and MFI expect helpers to follow the same work methods and standards it requires the Delivery Drivers to follow and to comply with all other requirements communicated by Allegiant and MFI, including attendance at meetings held by Allegiant and MFI management.

Allegiant and MFI permit Delivery Drivers to engage other Drivers and/or Helpers at their own expense who have been screened, qualified, and approved by Allegiant and MFI. Delivery Drivers may engage such Drivers and/or Helpers so that they are able to take a day off from work, such as for example when they are unable to come to work due to illness or so that they may have a day of rest. Allegiant and MFI expect Drivers and/or Helpers to follow the same work methods and standards it requires the Delivery Drivers to follow and to comply with all other requirements communicated by Allegiant and MFI, including following instructions given by Allegiant and MFI managers and attending mandatory meetings.

The Delivery Drivers are economically dependent for their financial livelihood on Allegiant and MFI, and Allegiant is entirely dependent on the Delivery Drivers for the retail merchandise delivery service provided by Allegiant to MFI. The Delivery Drivers are terminable at will. They may be terminated upon fifteen- or thirty-days written notice without cause or immediately for alleged breaches of the broadly-worded standards and obligations described in the Agreement.

The Agreements typically remain in effect for one year and are automatically renewed at the end of that period for another one-year term, unless either party gives notice of termination. Most of the Delivery Drivers have worked, or did work, for Allegiant and MFI for several years. Despite Allegiant's and MFI's pervasive control over all aspects of its delivery service operation, including the details of the Delivery Drivers' work, Allegiant and MFI have classified and treated the Delivery Drivers as "independent contractors." Allegiant's and MFI's classification and treatment of the Delivery Drivers as "independent contractors" rather than as "employees" is and during all relevant times has been unlawful.

As a result of Allegiant's and MFI's misclassification of the Delivery Drivers, including their assistant drivers and helpers, as "independent contractors," Allegiant and MFI have:

(1) required and/or knowingly permitted Delivery Drivers, including their assistant drivers and helpers, to work hours considerably in excess of eight hours per day, 12 hours per day, and/or 40 hours per week. Claimants are informed and believe, and on that basis allege, that it has been Allegiant's and MFI's policy and practice

to require and/or knowingly and willfully permit Delivery Drivers, including their assistant drivers and helpers, to work such overtime hours without paying them overtime compensation required by the California Labor Code;

(2) failed to indemnify them – specifically as to the Delivery Drivers - for the employment expenses they necessarily incur in performing their assigned job duties for Allegiant and MFI, such as the costs of providing and operating a Allegiant and MFI-approved delivery vehicle, including fuel, maintenance, repair, cleaning, marking, and licensing; Allegiant and MFI uniforms; wages paid to helpers and assistant drivers; insurance, including workers' compensation and employer's liability insurance, automobile liability insurance, general liability insurance, umbrella insurance, and cargo insurance; certain tools and equipment Allegiant and MFI requires the Delivery Drivers to purchase or rent from its clients; gift cards and other payments made to customers in response to customer complaints; losses associated with lost or damaged merchandise and other property damage; payroll administration services; and the equipment required to perform their duties, including moving pads, dollies, hand tools, and cellular telephones. Allegiant and MFI have taken deductions from Delivery Drivers' compensation to cover many of these, and other, employment-related expenses;

(3) failed to provide a 30 minute off-duty meal period to the Delivery Drivers, including their assistant drivers and helpers, who worked more than five hours in a day.  As a result of Allegiant's and MFI's misclassification of the Delivery Drivers, including their assistant drivers and helpers, as "independent contractors," Allegiant and MFI have failed to provide a second 30 minute off-duty meal period to the Delivery Drivers, including their assistant drivers and helpers, who worked more than 10 hours in a day;

(4) failed to authorize and permit a rest period of ten minutes per every four hours, or major fraction thereof, worked.  As a result of Allegiant's and MFI's misclassification of the Delivery Drivers, including their assistant drivers and helpers, as "independent contractors," Allegiant and MFI have failed to pay federal and California minimum wage compensation to the Delivery Drivers, including their assistant drivers and helpers, for all hours worked;

(5) failed to pay to the Delivery Drivers, including their assistant drivers and helpers, all wages due and owing twice per month at the times prescribed by Cal. Labor Code § 204;

(6) failed to itemize the total hours worked on wage statements furnished to the Delivery Drivers, including their assistant drivers and helpers, as required by Cal. Labor Code §§ 226, 226.3, and Wage Order 9;

(7) not properly maintained payroll records showing the actual hours the Delivery Drivers, including their assistant drivers and helpers, worked each day as required by Cal. Labor Code § 1174 and IWC wage order No. 9, § 7(A);

(8) willfully and knowingly failed to pay Delivery Drivers and their assistant drivers and helpers, upon termination of employment, all accrued compensation, including reimbursement of all unlawful deductions from wages, payment of missed meal and rest period compensation, and payment of minimum wage and overtime compensation;

(9) failed to maintain workers' compensation insurance covering the Delivery Drivers and their assistant drivers and helpers, and instead has required the Delivery Drivers to purchase their own workers' compensation insurance coverage and failed to contribute to the Unemployment Trust Fund on their behalf; and

(10) failed to provide Delivery Drivers, including their assistant drivers and helpers, with paid sick time off in accordance with Cal. Labor Code § 246.

Claimants seek to recover the unpaid compensation for all hours worked as defined by the Labor Code and the applicable Industrial Welfare Commission wage order as to the time during which an employee is subject to the control of an employer, and includes all the time the employee is engaged, suffered or permitted to work, whether or not required to do so, or as otherwise set forth in *Dynamex Operations West, Inc. v. Superior Court of Los Angeles*, 4 Cal.5th 903 (2018). California law requires that all hours worked over 8 in a day or 40 in a week or worked on the 7th consecutive day of a work week be paid 1.5 times an employee's regular rate of pay. *See, e.g.*, Lab. Code §§ 510, 1194; Cal. Code Regs., tit. 8, § 11090, *et seq.* In addition, hours worked over 12 in a day or hours over 8 worked on the 7th consecutive day in a week are paid at 2 times an employee's regular rate of pay.

Likewise, the pre-arranged delivery schedule, for which Delivery Drivers, including their assistant drivers and helpers, have no discretion to change or alter, does not account for meal or break time. California law also requires that an employer provide an employee who works more than five hours a meal break that is no less than 30 minutes in duration. 8 CCR 11090(11)(A). Unless an employee is relieved of all duty during the 30-minute meal period, the meal period is considered an on-duty meal period and counted as time worked. However, an on-duty meal period is permitted only when the nature of the work prevents an employee from being relieved of all duty and the parties agree in writing to an on-the-job paid meal period. *Id.* If an employer fails to provide an employee a lawful meal period, the employer must pay the employee one hour of pay for each violation. 8 CCR 11090(11)(D). Additionally, California law mandates that an employer must "authorize and permit" an employee to take a duty-free rest period not less than 10 minutes in duration for every four hours of work. 8 CCR

11090(12)(A).  Violation of the rest break provisions requires the employer pay the employee one hour of pay for each workday a rest period was not provided. 8 CCR 11090(12)(B).  Lastly, in California, the employer is required to keep records of all hours worked.  Labor Code § 1174(d).

Additionally, Labor Code §226.8 states: (a) It is unlawful for any person or employer to engage in any of the following activities;

(1)  Willful misclassification of an individual as an independent contractor,

(2)   Charging an individual who has been willfully misclassified as an independent contractor a fee, or making any deductions from compensation, for any purpose … arising from the individual's employment where any of the acts described in this paragraph would have violated the law if the individual had not been misclassified."

Claimants will likewise establish that Allegiant and MFI willfully misclassified them and all other similarly situated Delivery Drivers, including assistant drivers and helpers, as independent contractors based on the numerous practices and policies in place during the Relevant Time Period.  Furthermore, Allegiant and MFI did charge these people and make deductions from compensation for damages and charges they chose to impose on these individuals.  The penalty for this wrongdoing by any *de facto* employer appears in Labor Code §226.8 (b), to wit,

"If … a court issues a determination that a person or employer has engaged in any of the enumerated violations of subdivision (a), the person or the employer shall be subject to a civil penalty of not less than five thousand dollars ($5,000) and not more than fifteen thousand dollars ($15,000) for each violation, in addition to any other penalties or fines permitted by law."

Because Claimants and other similarly situated Delivery Drivers, including assistant drivers and helpers, were misclassified as "independent contractors," and therefore not fully compensated for all hours worked, were deprived of overtime compensation, Allegiant and MFI also failed to provide accurate wage statements in a violation of Labor Code Section 226, and failed to fully compensate former employees in a timely manner when their employment ended, in violation of Labor Code Section 201 *et seq*.

Accordingly, we believe that Allegiant and MFI have violated, and continues to violate, numerous provisions of California law, including, without limitation Labor Code Sections §§ 201, 202, 203, 204, 210, 216, 221, 225.5, 226, 226.3, 226.7, 226.8, 246, 510, 511, 512, 551, 552, 558, 1194-1197.1, 1198, 2802, and 2698, *et seq*., as well as the relevant IWC orders and regulations, and that Claimants and other similarly situated Delivery Drivers, including assistant drivers and helpers, are entitled to all statutory penalties allowed by law.  Our investigation is continuing, and there may be more violations uncovered.

We respectfully request that the Labor Workforce Development Agency notify this office within thirty (60) days if it wishes to investigate this matter further.  Should you have any questions or concerns or require additional information, please do not hesitate to contact the undersigned.

Should you have any questions or concerns or require additional information, please do not hesitate to contact the undersigned.  If Allegiant or MFI wishes to resolve these claims without resorting to protracted litigation, please contact the undersigned forthwith to discuss this matter further.

Thank you for your immediate attention to this matter.

Very truly yours,

Michael H. Boyamian

Cc:    Allegiant Last Mile Inc. (*Sent via Certified U.S. Mail*)
1505 Corporation
Registered Agents Inc
1401 21st Street Suite R
Sacramento, California 95811

Diverse Logistics & Distribution, Inc. (*Sent via Certified U.S. Mail*)
David J. Plante, Esq.
The Plante Law Group PLC
806 N. Armenia Ave.
Tampa, Florida 33609

Mattress Firm, Inc. (*Sent via Certified U.S. Mail*)
1505 Corporation
CT Corporation System
330 N. Brand Blvd.
Glendale, California 91203