1   MICHAEL H. BOYAMIAN, SBN 256107
    michael@boyamianlaw.com
2   ARMAND R. KIZIRIAN, SBN 293992
    armand@boyamianlaw.com
3   **BOYAMIAN LAW, INC.**
    550 North Brand Boulevard, Suite 1500
4   Glendale, California 91203
    Telephone:    (818) 547-5300
5   Facsimile:    (818) 547-5678

6   Attorneys for Plaintiffs CHRISTIAN DECENA,
    HAIRON MARTINEZ, MIGUEL RIOS, and
7   RIGOBERTO GODOY, and all others similarly situated

8                **UNITED STATES DISTRICT COURT**

9                **NORTHERN DISTRICT OF CALIFORNIA**

10  CHRISTIAN DECENA, an Individual,           Case No: 4:23-cv-03633-YGR
    HAIRON MARTINEZ, an Individual, an
11  Individual; MIGUEL RIOS, an                [*The Honorable Yvonne Gonzalez Rogers*]
    Individual; RIGOBERTO GODOY, an
12  Individual; Individually, and on Behalf of **CLASS ACTION**
    All Similarly Situated Individuals,
13                                             **NOTICE OF MOTION AND MOTION FOR**
                Plaintiffs,                    **FINAL APPROVAL OF CLASS ACTION**
14                                             **SETTLEMENT; MEMORANDUM OF POINTS**
            v.                                 **AND AUTHORITIES IN SUPPORT THEREOF**
15
    ALLEGIANT FINAL MILE INC., A               [CONCURRENTLY FILED WITH SUPPORTING
16  Florida corporation; DIVERSE               DECLARATIONS; [PROPOSED] ORDER]
    LOGISTICS & DISTRIBUTION, INC.,
17  a Florida corporation; MATTRESS            Date: March 25, 2025
    FIRM, INC., a Delaware corporation;        Time: 2:00 p.m.
18  and DOES 1 through 25, Inclusive,          Courtroom: 1 (4th Floor), Oakland Courthouse

19              Defendants.

20

21

22

23

24

25

26

27

28

---

1    **NOTICE OF MOTION AND MOTION TO ALL PARTIES AND THEIR ATTORNEYS**

2    **OF RECORD:**

3        **PLEASE TAKE NOTICE** that on Tuesday, March 25, 2025 at 2:00 p.m., or as soon

4    thereafter as the matter can be heard in Courtroom 1 of the United States District Courthouse located

5    at 1301 Clay Street, Oakland, California 94612, before the Honorable Yvonne Gonzalez Rogers,

6    Plaintiffs Christian Decena, Hairon Martinez, Miguel Rios, and Rigoberto Godoy ("Plaintiffs") will

7    and hereby do move this Court for an Order Granting Final Approval of Class Action Settlement.

8    Plaintiffs' Motion is based on this Notice and the accompanying Memorandum of Points and

9    Authorities and exhibits thereto; the Declaration of Armand R. Kizirian, and the respective exhibits

10    thereto; the Proposed Order; this Court's files and records; and any other evidence, briefing, or

11    argument properly before this Court.

12        Plaintiffs respectfully request that the Court: (1) grant final approval of the proposed

13    Settlement[1]; (2) certify the Class for settlement purposes only; (3) find that the Notice was the best

14    practicable notice under the circumstances and satisfied all Constitutional and other requirements; (4)

15    confirm  Class Members who have submitted timely requests for exclusion; (5) confirm as final the

16    Court's preliminary appointment of settlement Class Counsel; (6) confirm as final the Court's

17    preliminary appointment of Christian Decena, Hairon Martinez, Miguel Rios, and Rigoberto Godoy as

18    the class representatives; (7) approve a payment of $22,500 to the California Labor and Workforce

19    Development Agency (LWDA); (8) grant service enhancement awards to each class representative of

20    $10,000; (9) approve a gross settlement amount of $918,000[2] and grant an award of attorneys' fees of

21    $229,500 (25% from the gross settlement amount of $918,000) and litigation costs of $19,468.90, for a

22    total fee and expense award of $244,468.90; (10) tentatively award the settlement administrator,

---

[1] Capitalized terms herein have the same meaning as in the Settlement Agreement, attached as Exhibit "1" to the Declaration of Armand R. Kizirian in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Kizirian Decl."), filed herewith.

[2] There are 618 Class Members, which exceeds Allegiant's estimate by 7% (*i.e.,* 2% above the 5% variance provided in the settlement agreement).  Accordingly, Allegiant is responsible for paying an additional $18,000 (2% of the $900,000) for a total Gross Settlement Amount funding of $918,000

1

**Notice of Motion and Motion for Final Approval of Class Action Settlement;
Memorandum of Points and Authorities - Case No. 4:22-cv-00587-YGR**

1  Simpluris, Inc., $17,270 for claims administration expenses; (11) dismiss the action with prejudice

2  pursuant to the terms and conditions of the Settlement Agreement; (12) retain jurisdiction over the

3  enforcement and implementation of the Settlement Agreement; and (13) issue related orders as

4  necessary.

5

6  Dated: January 24, 2025                     Respectfully Submitted,

   **BOYAMIAN LAW, INC.**

7

8                                              By: ___/s/ Armand R. Kizirian_____

9                                                  Armand R. Kizirian
                                                   Attorneys for Plaintiffs CHRISTIAN DECENA,
10                                                 HAIRON MARTINEZ, MIGUEL RIOS, and
                                                   RIGOBERTO GODOY, and all others similarly
11                                                 situated

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................1

II.   FACTUAL BACKGROUND AND THE PARTIES' CONTENTIONS ..........................3

III.  PROCEDURAL BACKGROUND....................................................................................5

IV.   TERMS OF THE SETTLEMENT ...................................................................................8

V.    NOTICE PROCESS, OBJECTIONS, AND EXCLUSIONS ...........................................8

VI.   LEGAL ARGUMENT......................................................................................................9

      A.    The Settlement Meets the Criteria for Final Approval. ..........................................9

          1.    The Settlement is Fair Given the Strength of Plaintiffs' Case and
             the Risk, Expense, Complexity, and Likely Duration of Litigation. .........10

          2.    The Settlement Consideration and Allocation are Fair.............................12

          3.    The Settlement Reflects the Informed Views of Experienced
             Counsel and Is the Product of Serious, Arms-Length Negotiations
             Conducted After Extensive Discovery and Investigation.........................14

          4.    The Lack of Opposition by the Class Supports Approval. ........................15

      B.    Confirmation of the Court's Provisional Class Certification is Appropriate.........15

      C.    The Court-Ordered Notice Program Is Constitutionally Sound. ...........................16

      D.    Class Counsel Should be Compensated for Their Work from the Common Fund

          That Has Been Created Only Through Class Counsel's Significant Efforts. ........18

          1.    Class Counsel's Fee Is Properly Calculated as a Percentage of the
             Total Class Settlement .............................................................................18

          2.    Class Counsel's Request for 25% of the Common Fund is
             Reasonable ...............................................................................................21

          3.    The Lodestar Approach Demonstrates that Class Counsel's
             Attorneys' Fee Request is Fair, Reasonable and Justified Under the
             Facts of this Case ....................................................................................24

      E.    Settlement Administration Expenses are Reasonable............................................31

      F.    The Payment to the Class Representative Is Reasonable and Routinely

          Awarded by Courts ...............................................................................................31

VII.  CONCLUSION...............................................................................................................33

i

# TABLE OF AUTHORITIES

**CASES**

*Acosta v. Frito-Lay, Inc.*, 2018 WL 2088278 (N.D. Cal. May 4, 2018) ..........30, 31

*Alvarez v. Farmers Ins. Exch.*, No. 2017 WL 2214585 (N.D. Cal. Jan. 18, 2017).22

*Balderas v. Massage Envy Franchising, LLC* (N.D. Cal. July 21, 2014) 2014 U.S. Dist. LEXIS 99966 ..........................................................................................13

*Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) .........24

*Barcia v. Contain–A–Way, Inc.* (S.D. Cal. 2009) 2009 U.S. Dist. LEXIS 17118 ..15

*Bautista v. Harvest Management Sub* (C.D. Cal. July 7, 2014)  No. 2:12-cv-10004 (ECF No. 79) ...........................................................................................13

*Beckman v. KeyBank N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013)................................25

*Bell v. Farmers Insurance Exchange*, 115 Cal.App.4th 715 (2004) ......................18

*Bennett v. SimplexGrinnell LP*, 2015 WL 12932332 (N.D. Cal. Sept. 3, 2015).....23

*Black v. T-Mobile USA, INC.*, 219 WL 3323087 (N.D. Cal July 24, 2019) ..........21

*BML Stage Lighting, Inc. v. Mayflower Transit, Inc.*, 14 S.W.3d 395 (Tx. Ct. App. 2000)...................................................................................................4

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) .............................................18, 20

*Burns v. Elrod* (7th Cir. 1985) 757 F.2d 151.........................................................16

*Bussey v. Affleck*, 225 Cal.App.3d 1162 (1990) ....................................................30

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008)...........................28

*Chun v. Bd. of Trustees of E.R.S.*, 992 P.2d 127 (Haw. 2000) ...............................19

*Churchill Vill., LLC*. V. Gen. Elec. (9th Cir. 2004) 361 F.3d 566 .....................9, 16

*Class Plaintiffs v. City of Seattle* (9th Cir. 1992) 955 F.2d 1268 .............................9

*Cunningham v. Cnty of L.A.*, 879 F.2d 481 (9th Cir. 1988) ...................................24

i

1

**CASES (CONT.)**

2  *Davis v. City of San Diego*, 106 Cal.App.4th 893 (2003) ........................................28

3  *Davis v. J.P. Morgan Chase & Co.*, 827 F.Supp.2d 172 (W.D.N.Y. 2011) ...........25

4
   *Dawson v. Hitco Carbon Composites, Inc.*, 2019 WL 7842550 (C.D. Cal.
5        November 11, 2019)....................................................................23

6  *Eisen v. Carlisle & Jacquelin* (1974) 417 U.S. 156 ...............................................17

7
8  *Glass v. UBS Financial Services, Inc.*, 2007 WL 221862 (N.D. Cal. 2007)...........20

9  *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994) ....................................................19

10 *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011 ..............................9, 16, 21

11 *Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994).....................................................31

12
13 *Henriquez v. DSI Logistics*, Los Angeles County Superior Court Case No.
         BC714165 ....................................................................................22

14
15 *Hensley v. Eckerhart*, 461 U.S. 424 (1983)...........................................................26

16 *In re Ampicillian Antitrust Litigation*, 526 F. Supp. 494 (D.D.C. 1981) ...............24

17 *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ...........24

18 *In re Businessland Sec. Litig.*, 1991 WL 427887 (N.D. Cal. June 14, 1991)..........30

19 *In Re Cendant Corp. PRIDES Litigation*, 243 F.3d 722 (3rd Cir. 2001) ...............21

20
21 *In re GNC Shareholder Litig.*, 668 F.Supp. 450 (W.D. Pa. 1987) .........................30

22 *In re M.D.C. Holdings Securities Litigation*, 1990 WL 454747 (S.D. Cal. 1990)..20

23 *In re Omnivision Technologies, Inc.* (N.D. Cal. 2008) 559 F. Supp. 2d 1036 ........15

24 *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148
25       F.3d 283 (3d Cir. 1998)..................................................................24

26 *In re Quantum Health Resources, Inc.*, 962 F. Supp. 1254 (C.D. Cal. 1997).........20

27
28 *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270 (S.D. Ohio 1997) ......32

ii

**Notice of Motion and Motion for Final Approval of Class Action Settlement;**
**Memorandum of Points and Authorities - Case No. 4:22-cv-00587-YGR**

**CASES (CONT.)**

*In re Thirteen Appeals Arising Out of San Juan*, 56 F.3d 295 (1st Cir. 1995) .......19

*In re Warner Communications Sec. Litig.*, 618 F.Supp. 735 (S.D.N.Y. 1985).......30

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) ..........................32

*Johnson v. Brennan*, 2011 WL 4357376 (S.D.N.Y. 2011) ....................................25

*Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986)....................................................20

*Laffitte v. Robert Half Intern, Inc.*, 1 Cal.5th 480 (2016)................................19, 24

*Lealao v. Beneficial California, Inc.*, 82 Cal.App.4th 19 (2000) ...........................18

*Lo Re v. Chase Manhattan Corp.*, 19 F.E.P. Cas. (BNA) 1366 (S.D.N.Y. 1979) ..31

*Ma v. Covidien Holding, Inc.* (C.D. Cal. 2014) 2014 U.S. Dist. LEXIS 76359 .......9

*Maley v. Del Global Techs. Corp.*, 186 F.Supp.2d 358 (S.D.N.Y. 2002)...............25

*Mashburn v. National Healthcare, Inc.*, 684 F. Supp. 679 (M.D. Ala. 1988) ........19

*Matute v. Pilot Air Freight*, Northern District of California Case No. 4:22-cv-00587-YGR ........................................................................................................22

*MBNA America Bank, N.A. v. Gorman*, 147 Cal.App.4th Supp 1 (2006)...............28

*McKenzie v. Federal Exp. Corp.*, 2012 WL 2930201 (C.D. Cal. July 2, 2012) .....25

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.* (C.D. Cal. 2004) 221 F.R.D. 523 ..............................................................................................................15

*O'Sullivan v. AMN Services, Inc.* (N.D. Cal. Feb. 7, 2014) 12-cv-2125 (ECF No. 92)...............................................................................................................13

*Officers for Justice v. Civil Service Commission of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ..............................................................................................31

*Ontiveros v. Zamora*, 303 F.R.D. 356 (E.D. Cal. 2014).........................................30

*Paul, Johnson, Alston & Hunt v. Graulty*, 866 F.2d 268 (9th Cir. 1989) ..............18

iii

**Notice of Motion and Motion for Final Approval of Class Action Settlement;**
**Memorandum of Points and Authorities - Case No. 4:22-cv-00587-YGR**

**CASES (CONT.)**

*Perkins v. Mobile Housing Board*, 847 F.2d 735 (11th Cir. 1998) ........................26

*Rabin v. PricewaterhouseCoopers LLP*, 2021 WL 837626 (N.D. Cal. Feb. 4, 2021) ...........................................................................................................................23

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, 2012 WL 651640 (S.D.N.Y. Feb. 24, 2012)....................................................................................................25

*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513 (6th Cir. 1993)...........19

*Rodriguez v. West Publ'g Corp.* (9th Cir. 2009) 563 F.3d 948 .......................*passim*

*Sanders v. City of Los Angeles*, 3 Cal.3d 252 (1970) ..............................................18

*Scott v. Bimbo Bakeries* USA (E.D. Pa. March 5, 2014) No. 2:10-cv-03154 (ECF No. 174)........................................................................................................13

*Serrano v. Priest*, 20 Cal.3d 25 (1977) ...................................................................18

*Sheppard v. Consol. Edison Co. of N.Y., Inc.* U.S.D.C. Case No. 94-CV-0403 (JG), 2002 U.S. Dist. LEXIS 16314 (S.D.N.Y. Aug. 1, 2002)......................................32

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .................................................18

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir.1993)...............................19

*Torrisi v. Tucson Elec. Power Co.* (9th Cir. 1993) 8 F.3d 1370 .............................17

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403 (9th Cir. 1990)28

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976).............................29

*Van Gemert v. Boeing Co.*, 516 F. Supp. 412 (S.D.N.Y. 1981).............................24

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (1995) ..........................32

*Villegas v. J.P. Morgan Chase & Co.,* (N.D. Cal. 2012) 2012 U.S. Dist. LEXIS 166704 ....................................................................................................9, 13, 17

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ...................18, 21, 25

*Wershba v. Apple Computer*, 91 Cal.App.4th 224 (2001)........................................18

1

**CASES (CONT.)**

*Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997).....20

*Zeltser v. Merrill Lynch & Co., Inc.*, 2014 WL 4816134 (S.D.N.Y. 2014)............25

**STATUTES**

California Civil Code Section 1542...........................................................................33

Fed. R. Civ. P. 23 ................................................................................................9, 16, 17

**TREATISES**

Conte, Attorney Fee Awards, (2d Ed. 1977) § 2.08 ................................................30

Newberg on Class Actions (3rd Ed. 1992), § 14.03 ...............................................21

Newberg on Class Actions (4th Ed., 2002), § 11.41 ..............................................29

Rubenstein, Newberg on Class Actions (5th Ed. 2015), § 15:86 ...........................24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

v

**Notice of Motion and Motion for Final Approval of Class Action Settlement;**
**Memorandum of Points and Authorities - Case No. 4:22-cv-00587-YGR**

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3          On October 10, 2024, this Court granted preliminary approval of the class action

4    settlement reached in this action between Plaintiffs Christian Decena, Hairon Martinez, Miguel

5    Rios, and Rigoberto Godoy ("Plaintiffs") and Defendants Allegiant Final Mile, LLC

6    ("Allegiant"), Mattress Firm, Inc. ("Mattress Firm"), and Diverse Logistics & Distribution, LLC

7    ("Diverse") (erroneously sued as Diverse Logistics & Distribution, Inc.) (Allegiant and Mattress

8    Firm collectively, "Defendants") ("October 10, 2024 Order").  Plaintiffs now seek final approval

9    of the proposed Settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

10          Plaintiffs allege that they and other Settlement Class Members were misclassified as

11   Independent Contractors while performing services for Defendants, and therefore denied the

12   protections of the California Labor Code.  Plaintiffs therefore alleged claims for unpaid wages,

13   minimum wages, overtime pay, interest thereon, wage statement and waiting time penalties, and

14   other equitable relief, as well as reasonable attorneys' fees and costs.  Defendants deny

15   Plaintiffs' allegations, and the parties reached a settlement of claims that includes a Gross

16   Settlement Amount of Nine Hundred Eighteen Thousand Dollars and Zero Cents ($918,000.00)[3],

17   which includes attorneys' fees and costs, the payment to the Labor and Workforce Development

18   Agency ("LWDA"), enhancement awards to the class representatives, and court-approved costs

19   of settlement administration.

20          Notice was mailed to 618 Class Members November 22, 2024. As explained in detail

21   below, the notice procedures here were adequate.  To date, the reaction of the Class has been

22   unanimously positive.  The postmark deadline for opt-outs, disputes, and objections is February

23   21, 2025.  As of January 24, 2025, the settlement administrator, Simpluris, Inc. ("Simpluris"),

24   has received zero requests for exclusion from the Settlement.  More significantly, Simpluris has

25

26   ─────────────────────
[3] There are 618 Class Members, which exceeds Allegiant's estimate by 7% (*i.e.,* 2% above the
27   5% variance provided in the settlement agreement).  Accordingly, Allegiant is responsible for
paying an additional $18,000 (2% of the $900,000) for a total Gross Settlement Amount funding
28   of $918,000

1

received zero objections to the Settlement.  Therefore, thus far, 618 Class Members have chosen to participate in this Settlement and none have opposed it.  Declaration of Markus Bulthuis Regarding Notice and Settlement Administration ("Bulthuis Decl."), ¶¶ 8, 11-12.

Based upon the substantial result Plaintiffs' Counsel has achieved on behalf of the Class, Plaintiffs' Counsel requests a fee award of 25% of the common fund, ($229,500), the Ninth Circuit's benchmark for class action settlements.

In addition, through this Motion, Plaintiffs seeks reimbursement of $19,468.90 in litigation costs and authorization to pay the settlement administrator $17,270 in for their work in this matter.  As Plaintiffs' litigation costs and the work of Simpluris have been necessary to the resolution of this matter, reimbursement to Plaintiffs' Counsel and payment to the settlement administrator is proper and authorized under numerous precedents.  Finally, Plaintiffs' Counsel seeks a service award of $10,000 to each of the Plaintiffs for their assistance to counsel in this action and for agreeing to a comprehensive general release as part of the proffered settlement.

With respect to the request for 25% of the Gross Settlement Amount for attorneys' fees, this should be granted by the Court for the following reasons:

**Degree of Success**: The $918,000 gross settlement is a respectable recovery for the approximately 618 Class Members given the significant hurdles the Class faces in pursuing a misclassification wage and hour class action suit such as this against the three named defendants. Before the putative class could even reach a trial on the merits, Plaintiffs would first have to secure certification, something that Defendants have strenuously contested.  Instead, rather than waiting several years for a resolution of the instant matter, the Parties' settlement allows for Class Members to receive compensation for their harm at a relatively early stage in the litigation. Moreover, as Plaintiffs' Counsel has reduced their fee request from 33%, as estimated in the Motion for Preliminary Approval (Dkt. No. 54, p. 30), to 25% of the gross settlement amount, the net amount available to Class Members will be higher than first anticipated.

**Risks of Continued Litigation**: The substantial result achieved in this case was obtained in the face of a significant risk of receiving nothing or a substantially reduced amount if litigation continued.  As set forth below, Defendants had potentially several strong defenses to this case

2

that would either completely defeat Plaintiffs' claims or substantially limit their value, particularly if Defendants were able to limit the scope of the class or the claims to be certified as a result of a second motion to dismiss and strike portions of the operative complaint.

**Fees Awarded by Other Courts**: The percentage sought by Class Counsel is within the historical range of fees awarded by other federal and state courts in similar class actions.

**Time Expended and Lodestar Cross-Check**: Class Counsel performed significant work to achieve the settlement. The lodestar to date is $294,347.50. The negative multiplier of 0.78 which Plaintiffs seek in order to secure a recovery of 25% of the gross settlement amount ($229,500) is well within the range of attorney fee awards permitted by state and federal courts in California.

**Contingent Nature of Litigation**: During the pendency of the case, Class Counsel has not received any money and has advanced all costs to date.

Ultimately, the present 100 percent participation rate in a Class comprised of several hundred individuals confirms that the Settlement is reasonable and in the best interests of the Class.[4] Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement and grant the requested attorneys' fees, costs, service awards, and payment to the settlement administrator.

## II.    FACTUAL BACKGROUND AND THE PARTIES' CONTENTIONS

Defendant Allegiant is a logistics company that contracts with retailers, such as Mattress Firm, to handle the logistics for consumer deliveries in California. Allegiant's logistics work includes utilizing its property brokerage authority to place Mattress Firm goods with Contract Carriers that have the equipment (trucks) and labor (typically a driver and helper per truck) to physically deliver the goods.[5] The Contract Carriers and their workers—referred to here as "Drivers" and "Helpers"— are

---

[4] Plaintiffs will submit a supplemental declaration from the third-party administrator once the notice period closes to apprise the Court of the final number of opt-outs and/or objections to the proposed Settlement on or before March 18, 2025 per the Court's Order (Dkt. No. 60).

[5] "Contract Carrier" is a term of art in the transportation industry for a motor carrier providing transportation service to meet the special needs of an individual shipper. *See, e.g.,* Freight Motor Carrier Oversight: Hearing Before the Subcomm. on Surface Transp. of the Comm. on Commerce, Sci., and Transp., 102d Cong. 10 (1991) ("Contract carrier authority allows carriers

1  the focus of this suit.  Information exchanged in the litigation shows that, while Defendant Diverse

2  shares some common ownership with Allegiant, Diverse does not operate in California and does not

3  have any employees or independent contractors in California.  Declaration of Armand R. Kizirian

4  ("Kizirian Decl."), ¶ 6.

5      This freight that putative Class Members moved were products provided by Defendant

6  Mattress Firm.  Along with Allegiant's personnel, the warehouses that the Contract Carriers, Drivers,

7  and Helpers operated out of were also staffed by employees of Mattress Firm.  Essentially, while

8  Allegiant's role was focused more upon the logistics of planning the deliveries to Mattress Firm's

9  customers, it is Plaintiffs' contention that Mattress Firm's role was in ensuring that the Contract

10  Carriers, Drivers, and Helpers provided the appropriate customer experience while conducting the

11  deliveries.  Plaintiffs Christian Decena, Hairon Martinez, and Miguel Rios were Contract Carriers that

12  contracted with Allegiant during the Class Period.  Plaintiffs Christian Decena, Hairon Martinez,

13  Miguel Rios, and Rigoberto Godoy all worked as Drivers for Contract Carriers that contracted with

14  Allegiant during the Class Period.  In addition, Plaintiff Rigoberto Godoy worked as a Helper for

15  Contract Carriers that contracted with Allegiant during the Class Period.  Kizirian Decl., ¶ 7.

16      Plaintiffs contend that the Contract Carriers, Drivers, and Helpers, are misclassified as

17  independent contractors when they are really employees.  Defendants deny that any of the Contract

18  Carriers, Drivers, or Helpers have been misclassified.  If Plaintiffs were to establish the employment

19  relationship between Defendants and the putative Class, Plaintiffs contend that Defendants would owe

20  the Contract Carriers, Drivers, and Helpers substantial compensation for violation of California's wage

21  and hour laws as no attempt is made by Defendants to track the putative Class's hours of work, ability

22  to take meal and rest breaks, or reimbursement of the Class's work expenses.  Kizirian Decl., ¶ 8.

23  ///

24

25  ───────────────────

26  to tailor specific service standards to individual shippers and is considered an extremely
   important marketing tool in securing shipper business."); *BML Stage Lighting, Inc. v. Mayflower*

27  *Transit, Inc.*, 14 S.W.3d 395, 403 (Tx. Ct. App. 2000) (a "contract carrier provides transportation
   of "property for compensation under continuing agreements with one of more persons (i) by

28  assigning motor vehicles for a continuing period of time for the exclusive use of each such
   person; or (ii) designed to meet the distinct needs of each such person.") (cleaned up).

This is so, Plaintiffs contend, because Defendants maintained no meal period policies, rest policies, or any other wage and hour policies for the Settlement Class because they simply did not treat them as employees. Moreover, the expenses Plaintiffs contend that Class Members, particularly Contract Carriers, were forced to shoulder include the costs for things like truck insurance, fuel, vehicle maintenance, and cell phones used to communicate with dispatch. Defendants deny all of these claims. Kizirian Decl., ¶ 9.

There are 618 Settlement Class Members who currently or formerly delivered Mattress Firm products as Contract Carriers, Drivers, and Helpers in the State of California. As noted, Plaintiffs claim that these Contract Carriers, Drivers, and Helpers were Defendants misclassified independent contractors who should have been treated as employees. However, because Defendants maintain that these Contract Carriers, Drivers, and Helpers were not their employees, Defendants cannot be liable for the allegedly unpaid wages, penalties, or other damages, that were sought in this action. Kizirian Decl., ¶ 10.

## III.    PROCEDURAL BACKGROUND

On March 24, 2023, Plaintiffs filed this case in Alameda County Superior Court on behalf of all individuals who performed delivery services for Defendants as Contract Carriers, Drivers, and/or Helpers and worked in the State of California from September 27, 2018, and continuing while the action was pending. The Complaint included nine causes of action: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Compensation; (3) Reimbursement of Employment Expenses; (4) Unlawful Deduction from Wages; (5) Failure to Provide Meal Periods; (6) Failure to Authorize and Permit Rest Periods; (7) Failure to Furnish Accurate Wage and Hour Statements; (8) Waiting Time Penalties; and (9) Unfair Competition. On June 6, 2023, Plaintiffs filed a First Amended Complaint which added a tenth cause of action under the Private Attorneys General Act of 2004. Kizirian Decl., ¶ 11.

On July 21, 2023, Defendant Mattress Firm removed this action to the United States District Court for the Northern District of California. The case was ultimately assigned to the Honorable Yvonne Gonzalez Rogers. In August 2023, Counsel discussed the possibility of attending an early

5

1  mediation. The Parties agreed to attend a mediation with Antonio Piazza, Esq., which was scheduled

2  for January 16, 2024. Kizirian Decl., ¶ 12.

3  While the Parties were gearing up for their mediation, they did not stay this matter. Instead, on

4  July 28, 2023, Defendants Allegiant and Diverse filed a Motion to Dismiss the Second (failure to pay

5  overtime), Fifth (failure to provide meal breaks), and Sixth Causes of Action (failure to provide rest

6  breaks). Plaintiffs filed their opposition on August 25, 2023, with Defendants Allegiant and Diverse

7  submitting their reply on September 1, 2023. The Court thereafter issued its ruling on January 2,

8  2024, granting Defendants' motion, but allowing Plaintiffs leave to amend. On June 16, 2024,

9  Plaintiffs filed their operative Second Amended Complaint. Kizirian Decl., ¶ 13.

10  From before they filed suit, but especially in the months leading up to mediation, Class/PAGA

11  Counsel conducted a thorough investigation into the relevant facts and legal claims. Class/PAGA

12  Counsel formulated a list of documents and data they would need from Defendants in order to conduct

13  a meaningful mediation. After meeting and conferring with Defendants' Counsel on this matter,

14  Defendants informally produced substantial amounts of data and documentary evidence to Plaintiffs.

15  With this data, Class/PAGA Counsel estimated the amount of damages potentially available to

16  putative Class Members based on the scope of wage and hour violations, assuming Plaintiffs

17  successfully established misclassification. Through the efforts of Plaintiffs themselves, Class/PAGA

18  Counsel was also able to contact various other Contract Carriers, Drivers, and Helpers in the putative

19  Class, thus allowing Class/PAGA Counsel to gain a better understanding of the strengths and

20  weaknesses of the case before attending mediation. Kizirian Decl., ¶ 14.

21  After a full day of mediation, with the extensive efforts and assistance of Mr. Piazza, the

22  Parties were able to reach a settlement in principle on January 16, 2024. Class/PAGA Counsel's

23  experience in litigating numerous independent contractor misclassification suits and the documents

24  and data exchanged by the Parties in the lead up to mediation informed Class/PAGA Counsel's

25  decision to endorse the $918,000 (previously $900,000) gross settlement amount. Although the

26  Parties agreed upon a settlement figure on January 16, 2024, negotiations regarding the specific terms

27  of the agreement continued into June 2024. Kizirian Decl., ¶ 15.

28  ///

1    In January 2024, following the Parties' mediation, Class/PAGA Counsel came to believe that

2    the federal Department of Labor might initiate their own action against Defendant Allegiant for

3    alleged wage and hour violations.  Not wanting to inadvertently undermine a government enforcement

4    action that could result in an objection to the Parties' settlement, Plaintiffs gave the Department of

5    Labor time to initiate their own action with the idea of potentially taking such action into account in

6    framing the scope of the Parties' settlement.  As Plaintiffs are not aware of the Department of Labor

7    initiating such an action, the Parties moved ahead with finalizing their Settlement.  Kizirian Decl., ¶

8    16.

9        Plaintiffs thereafter moved for preliminary approval of their class and PAGA settlement on

10   August 23, 2024 (Dkt. No. 54).  The Motion for Preliminary Approval was unopposed.  At the

11   hearing, the Court required changes to be made to the proposed settlement notice documents,

12   specifically the Notice of Class and PAGA Representative Settlement and the Payment Information

13   Form, which were subsequently lodged thereafter (Dkt. No. 57).  Preliminary approval was granted by

14   the Court on October 10, 2024, setting the final approval hearing for March 18, 2025 (Dkt. No. 58).

15   Due to the wildfires in the Los Angeles area in January 2025 impacting counsel for the Parties, the

16   Court granted a stipulation submitted by the Parties to move the final approval hearing date, resetting

17   it to March 25, 2025 at 2:00 p.m. (Dkt. No. 60).  Kizirian Decl., ¶ 17.

18       Based on their independent investigation and evaluation, Class/PAGA Counsel are of the

19   opinion that the Settlement with Defendants for the consideration and on the terms set forth in the

20   Settlement Agreement is fair, reasonable, and adequate, and is in the best interests of the Settlement

21   Class Members, in light of all known facts and circumstances, including the risk of significant delay,

22   the risk that if this matter is litigated a class may not be certified by the Court or that it may later be

23   decertified, the risk that Defendants will prevail on their defenses, as well as potential appellate issues.

24   Given the highly positive response of the Settlement Class Members to the proffered settlement,

25   Plaintiffs believe that this Court should enter final approval of the Parties' class and PAGA settlement.

26   Kizirian Decl., ¶ 18.

27   ///

28   ///

7

1  IV.    **TERMS OF THE SETTLEMENT**

2         The complete Settlement Agreement, along with its exhibits, is attached as Exhibit "1" to the

3  Declaration of Armand R. Kizirian, filed concurrently herewith.

4  V.    **NOTICE PROCESS, OBJECTIONS, AND EXCLUSIONS**

5         With the Court's preliminary approval, the Settlement designated Simpluris as the settlement

6  administrator in this case.  The Settlement provided that Simpluris would provide Notice of Settlement

7  of Class Action (the "Notice") by first class mail to the last known addresses of Class Members.

8  Settlement, ¶ IV(C).

9         Settlement Class Members have had 60 days to submit the optional Payment Information

10 Form, opt-out, or object to the Settlement.  Settlement, ¶ IV(E), (H), (J).

11        On October 28, 2024, Simpluris received from Defendants a computerized list of 618 Class

12 Members.  Bulthuis Decl., ¶ 6.  Simpluris formatted the list for mailing purposes, removed duplicate

13 records, and processed the names and addresses through the National Change of Address Database to

14 update any addresses on file with the United States Postal Service.  Bulthuis Decl., ¶¶ 7-8.

15        On November 22, 2024, Simpluris caused the Notice to be printed and mailed to the 618 names

16 on the original class list.  Simpluris delivered the Notices to the United States Post Office.  Bulthuis

17 Decl., ¶ 8.

18        In addition, since the mailing date, 100 Notices have been returned by USPS to Simpluris as

19 bearing undeliverable addresses.  Simpluris performed advanced address searches for this Notice and

20 was able to remail the Notice for 47 Class Members.  However, according to Simpluris 53 Notices

21 remain undeliverable.  Bulthuis Decl., ¶¶ 10.

22        The postmark deadline for filing requests for exclusion, objections, and disputes of the

23 employment information provided in the Notice is February 21, 2025.  To date, Simpluris has received

24 zero requests for exclusion.  Notably, Simpluris has not received any objections to the Settlement.

25 Bulthuis Decl., ¶¶ 11-13.

26 ///

27 ///

28 ///

8

1  ## VI.    LEGAL ARGUMENT

2     ### A.    The Settlement Meets the Criteria for Final Approval.

3        Courts strongly favor settlement, particularly in complex class actions.  *Class Plaintiffs v.*

4  *City of Seattle* (9th Cir. 1992) 955 F.2d 1268, 1276; *see also Churchill Vill., LLC*. V. Gen. Elec.

5  (9th Cir. 2004) 361 F.3d 566, 576.  Approval of a class action settlement rests in the sound

6  discretion of the trial court.  *Hanlon v. Chrysler Corp*. (9th Cir. 1998) 150 F.3d 1011, 1026.

7        In determining final approval, the court's inquiry is whether the settlement is "fair,

8  adequate, and reasonable."  Fed. R. Civ. P. 23(e)(2).  A class action settlement meets this

9  standard when "the interests of the class are better served by the settlement than by further

10  litigation."  Manual for Complex Litigation (Fourth) § 21.61 (2004).  Rule 23(e)'s primary

11  concern is "the protection of those class members, including the named plaintiffs, whose rights

12  may not have been given due regard by the negotiating parties."  *Ma v. Covidien Holding, Inc.*

13  (C.D. Cal. 2014) 2014 U.S. Dist. LEXIS 76359, *4.  However, rather than reaching any

14  conclusions on the contested legal and factual issues, a court may "presume that through

15  negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by

16  considering Plaintiff's likelihood of recovery."  *Villegas v. J.P. Morgan Chase & Co.,* (N.D. Cal.

17  2012) 2012 U.S. Dist. LEXIS 166704, *15-16.

18        In deciding whether a class action settlement is fair, adequate and reasonable, courts in

19  the Ninth Circuit consider the following factors: (1) the strength of the Plaintiff's case; (2) the

20  risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining

21  class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of

22  discovery completed, and the stage of the proceedings; (6) the experience and views of counsel;

23  (7) the presence of a governmental participant; and (8) the reaction of the class members to the

24  proposed settlement.  *Rodriguez v. West Publ'g Corp*. (9th Cir. 2009) 563 F.3d 948, 963

25  (overruled on other grounds).

26        As discussed below, these factors weigh heavily in favor of final approval because the

27  benefit of a considerable non-reversionary financial recovery of $918,000 distributed to 618

28  Class Members outweighs the risks, costs and delays inherent in further class action litigation.

9

1          1.    **The Settlement is Fair Given the Strength of Plaintiffs' Case and the**

2                **Risk, Expense, Complexity, and Likely Duration of Litigation.**

3          The first, second, and third *Rodriguez* factors all support final approval of this Settlement.

4    As to the first prong, Plaintiffs face the difficult task of proving that Class Members were

5    misclassified as independent contractors.  Plaintiffs must convince the trier of fact that

6    Defendants exerted so much control over Class Members that they should as a matter of law be

7    deemed to be the employees of Defendants.  Plaintiffs must clear this significant hurdle before

8    even beginning to approach the issue of proving the asserted labor code violations.  The

9    uncertainty over whether Plaintiffs will be able to achieve class certification, whether Class

10   Members will be deemed to be employees of both (or either) Defendants, and whether Plaintiffs

11   will be able to prove the asserted labor code violations make this $918,000 settlement amount for

12   618 Class Members a genuinely "fair, adequate, and reasonable" result.

13         Plaintiffs allege that Defendants improperly misclassified the Settlement Class Members

14   as independent contractors exempt from minimum wage, overtime, meal and rest period laws,

15   and the wider protections of the California Labor Code and wage orders.  Although Plaintiffs

16   believe they have a strong case, further litigation carries numerous risks and obstacles for

17   Plaintiffs and Settlement Class Members, as described below.  Kizirian Decl., ¶ 19.

18         Plaintiffs contend Settlement Class Members suffered injuries as a result of Defendants

19   misclassifying them as independent contractors when they were actually employees.  If Plaintiffs

20   were to establish the employment relationship between Defendants and the Settlement Class,

21   Plaintiffs contend that Defendants would owe the Contract Carriers, Drivers, and Helpers

22   substantial compensation for violation of California's wage and hour laws as no attempt is made

23   by Defendants to track the Settlement Class's hours of work, ability to take meal and rest breaks,

24   or reimbursement of the Class's work expenses.  Kizirian Decl., ¶ 20.

25          In particular, Plaintiffs contend that many Class Members such as Contract Carriers,

26   were forced to cover the costs for truck insurance, fuel, vehicle maintenance, and cell phones

27   used to communicate with dispatch.  Plaintiffs' investigation and the document exchange

28   completed with Defendants has shown that Defendants imposed common policies, whether

                                        10

formally or through a course of conduct, where they and only they exerted significant control over the work of Class Members.  Nevertheless, Defendants disagree with this characterization, and if trial testimony reveals that contract carrier Class Members were somewhat insulated from Defendants' control, and that the truck owner Class Members were mostly exerting control over the contract carrier Class Members, class treatment in such a scenario may become untenable. Kizirian Decl., ¶ 21.

However, the uncertainty over whether Plaintiffs will maintain class certification and the appropriateness of class treatment, and whether Plaintiffs will be able to prove the asserted labor code violation makes this $918,000 settlement amount for 618 Class Members a genuinely "fair, adequate, and reasonable" result.

The second *Rodriguez* factor also supports the final approval of this settlement. First, Plaintiffs may not be able to certify the Putative Class under Rule 23(b).  Plaintiffs largely rely on the Defendants' uniform business practices that treat the Settlement Class Members as non-employees or independent contractors to establish both commonality and predominance. Plaintiffs will also argue that other common issues also predominate, such as whether the job expectations and degree of control exercised by Defendants upon the Contract Carriers, Drivers, and Helpers are uniform across the Class.  Kizirian Decl., ¶ 22.

Even if Plaintiffs can show that Contract Carriers, Drivers, and Helpers were not independent contractors, Defendants can assert numerous defenses regarding liability and damages.  For instance, Defendants contend that the Contract Carriers with which they contracted to perform delivery services employed Drivers and Helpers, creating both a conflict within the class if pursued, and also shifting liability away from Defendants.  Kizirian Decl., ¶ 23.

With regard to Plaintiffs' claims for wage statement and waiting time penalties, both claims are derivative of Plaintiffs' primary wage claims.  Thus, Plaintiffs would recover nothing for themselves, or the Class, if the underlying claims are unsuccessful.  Kizirian Decl., ¶ 24.

Defendants' positions in this litigation may result in no recovery for Plaintiffs and the Settlement Class Members, or protracted appeals and significant risks to meaningful recovery for the Settlement Class Members.  Consequently, the benefits of the settlement greatly outweigh the

11

1    risks of continuing to litigate the issues in this case.  Kizirian Decl. ¶ 25.

2         Moreover, if this case ultimately reaches trial, the trial process itself is likely to be long

3    and complicated.  As this is a misclassification case, Plaintiffs must present evidence on the issue

4    of whether Class Members are to be deemed the employees of Defendants.  Only after presenting

5    evidence on the issue of employee or independent contractor status would Plaintiffs begin

6    presenting evidence on the asserted labor code violations.  As Plaintiffs allege claims for

7    numerous violations, including unpaid overtime, meal break violations, rest break violations,

8    unfair competition, and PAGA penalties, the trial length would be significant.  Kizirian Decl. ¶

9    26.

10        Finally, the third *Rodriguez* factor also favors approval of the instant settlement.  While

11   Plaintiffs contend that Settlement Class Members were misclassified, it is nevertheless true that

12   the way each Contract Carrier conducted operations, including from the Drivers and Helpers it

13   formally employed, varied to an extent between them.  For the Contract Carriers themselves, the

14   nature of their work was less consistent than with Drivers and Helpers.  Thus, even if most or all

15   of the Contract Carriers, Drivers, and Helpers can be said to have been misclassified, whether

16   class certification outside of the settlement context under Rule 23 would be granted is a very

17   different question.  Thus, while the $918,000 gross settlement amount appears at first glance to

18   be a substantial discount on the maximum damages available, given the risks of this particular

19   suit, the amount is extremely reasonable and results in a good settlement for the putative class.

20   Put differently, if trial testimony shows that the amount of control that Defendants had over

21   Class Members varied based on the way each Contract Carrier conducted operations varied, the

22   suit may then be deemed inappropriate for class treatment.  Kizirian Decl., ¶ 27.

23                    2.    **The Settlement Consideration and Allocation are Fair.**

24        Simpluris has preliminarily calculated the class member settlement awards based on a

25   Net Settlement Amount of $581,761.10 and 618 participating Class Members.  Specifically, the

26   net settlement sum was calculated by subtracting the requested attorneys' fees ($229,500.00), the

27   amount allocated for litigation costs and expenses ($19,468.90), the requested Enhancement

28   Payments ($10,000.00 for each Plaintiff, total $40,000), the requested Settlement Administration

                                              12

1    Costs ($17,270.00), and the LWDA Payment ($22,500.00) from the Gross Settlement Amount

2    ($918,000.00).  Bulthuis Decl., ¶ 14.

3         Based on the above calculations, the average claim value for 618 participating Class

4    Members with a $581,761.10 Net Settlement Amount is $941.36, and the highest individual

5    settlement payment will be $6,458.44.  Bulthuis Decl., ¶ 14.

6         "[I]t is well-settled law that a cash settlement amounting to only a fraction of the

7    potential recovery does not per se render the settlement inadequate or unfair. Rather, the fairness

8    and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation

9    to judgment." *Villegas*, 2012 U.S. Dist. LEXIS 166704 at *16. (internal quotations and citations

10   omitted).

11        Case law demonstrates that even a fractional recovery may be fair and reasonable

12   depending on the circumstances of the case. *See Balderas v. Massage Envy Franchising, LLC*

13   (N.D. Cal. July 21, 2014) 2014 U.S. Dist. LEXIS 99966, *16 (preliminarily approving settlement

14   "on the low end of the spectrum for class settlement awards receiving approval" where gross

15   settlement amount of $504,000 "represents roughly eight percent of the maximum recovery" and

16   net settlement amount of $325,000 represents "just five percent."); *O'Sullivan v. AMN Services,*

17   *Inc*. (N.D. Cal. Feb. 7, 2014) 12-cv-2125 (ECF No. 92) ($3 million gross settlement amount for a

18   class of 11,685 people – total exposure estimated for the case was $108 million, before penalties

19   and interest); *Scott v. Bimbo Bakeries* USA (E.D. Pa. March 5, 2014) No. 2:10-cv-03154 (ECF

20   No. 174) (approving settlement of wage and hour claims alleging independent contractor

21   misclassification for payments of $900 to each current driver and $450 to each former driver*);*

22   *Bautista v. Harvest Management Sub* (C.D. Cal. July 7, 2014)  No. 2:12-cv-10004 (ECF No. 79)

23   (final approval of a $2.2 million gross settlement amount for wage-and hour violation claims of

24   14,000-member class).

25        Accordingly, as set forth in Plaintiffs' Motion for Preliminary Approval and based on the

26   settlement administrator's calculation of the projected individual recoveries, the amount in

27   settlement here is reasonable given the strength of Plaintiffs' claims and the risks, expenses, and

28   complexity of continued litigation as described above.  Kizirian Decl., ¶ 28.

13

The plan of allocation is also fair and reasonable.  The Settlement provides that the settlement fund shall be allocated based, for all intents and purposes, the length of work of the participating Class Member during the time period encompassed by the suit.  Kizirian Decl., ¶ 29.

3.  **The Settlement Reflects the Informed Views of Experienced Counsel and Is the Product of Serious, Arms-Length Negotiations Conducted After Extensive Discovery and Investigation.**

The fifth and sixth *Rodriguez* factors—the informed views of counsel and the discovery conducted to date in the litigation—also support final approval of the Settlement.

Prior to filing the complaint, Class Counsel was readily familiar with the business model of Defendants, having filed similar wage and hour class action lawsuits against other retailers and logistics providers with an analogous arrangement as that of Mattress Firm and Allegiant. From before they filed suit, but especially in the months leading up to mediation, Plaintiffs' Counsel conducted a thorough investigation into the relevant facts and legal claims.  Plaintiffs' Counsel formulated a list of documents and data they would need from Defendants in order to conduct a meaningful mediation.  Kizirian Decl., ¶ 30.

After meeting and conferring with Defense Counsel on this matter, Defendants informally produced substantial amounts of data and documentary evidence to Plaintiffs.  With this data, Plaintiffs' Counsel calculated the damages potentially available to Putative Class Members based on the scope of wage and hour violations, assuming Plaintiffs successfully established misclassification.  Through the efforts of Plaintiffs themselves, Plaintiffs' Counsel were also able to contact various other Contract Carriers, Drivers, and Helpers of Defendants, thus allowing Plaintiffs' Counsel to gain a better understanding of the strengths and weaknesses of the case before attending mediation.  Kizirian Decl., ¶¶ 31.

After a full day of mediation, with the extensive efforts and assistance of the mediator, Antonio Piazza, the Parties were able to reach a settlement in principle on January 16, 2024. Settlement Class Counsel's experience in litigating numerous independent contractor misclassification suits and the documents and data exchanged by the Parties in the lead up to

14

1    mediation informed Plaintiffs' Counsel decision to endorse the $918,000 gross settlement

2    amount.  Although the Parties agreed upon a settlement figure on January 16, 2024, negotiations

3    regarding the specific terms of the agreement continued into May 2023.  Kizirian Decl., ¶ 32.

4         Class Counsel is experienced in class action litigation and focuses on employment wage

5    and hour matters.  Under these circumstances, Class Counsel's assessment that the Settlement is

6    fair, adequate, and reasonable is worthy of deference.  *Nat'l Rural Telecomms. Coop. v.*

7    *DIRECTV, Inc.* (C.D. Cal. 2004) 221 F.R.D. 523, 528 ("'Great weight' is accorded to the

8    recommendation of counsel, who are most closely acquainted with the facts of the underlying

9    litigation.").

10              4.    **The Lack of Opposition by the Class Supports Approval.**

11        "It is established that the absence of a large number of objections to a proposed class

12   action settlement raises a strong presumption that the terms of a proposed class settlement action

13   are favorable to the class members."  *In re Omnivision Technologies, Inc.* (N.D. Cal. 2008) 559

14   F. Supp. 2d 1036, 1043 (internal citations omitted).

15        As described above, pursuant to the Court's preliminary approval order, Simpluris mailed

16   the Notice to all Settlement Class Members identified through the data provided by Defendants.

17   Bulthuis Decl., ¶ 8.  The deadline to object to the Settlement and the deadline to opt-out from the

18   Settlement is February 21, 2025.  To date, Simpluris has received zero objections and zero opt-

19   outs to the Settlement.  Bulthuis Decl., ¶¶ 11-13.

20        A 100% participation rate and 0% objection rate supports the view that the Settlement is

21   fair and reasonable.  *Barcia v. Contain–A–Way, Inc.* (S.D. Cal. 2009) 2009 U.S. Dist. LEXIS

22   17118, *12 (absence of objectors "strongly supports the fairness, reasonableness, and adequacy

23   of the settlement").

24        **B.    Confirmation of the Court's Provisional Class Certification is Appropriate**

25        Plaintiffs also requests that the Court confirm its provisional certification order and find

26   that the proposed Settlement Class meets all the requirements under Rule 23.  Specifically,

27   Plaintiffs ask the Court to finally certify the following classes for settlement purposes:

         "Settlement Class Members: (a) all individuals who provided services to
28       Allegiant delivering Mattress Firm products as contract carrier owners, drivers

                                           15

1

and/or helpers in the State of California; and (b) all contract carrier owners who owned or controlled an entity that contracted directly with Allegiant and provided delivery services delivering Mattress Firm products in the State of California, at any time during the Class Period [January 1, 2020 to October 10, 2024]."

2

3

4

Settlement Agreement sec. II.C.  Plaintiffs also request approval of the following:

5

"PAGA Group Members: (a) all individuals who provided services to Allegiant delivering Mattress Firm products as contract carrier owners, drivers and/or helpers in the State of California; and (b) all contract carrier owners who owned or controlled an entity that contracted directly with Allegiant and provided delivery services delivering Mattress Firm products in the State of California, at any time during the PAGA Period [March 31, 2022 to October 10, 2024]."

6

7

8

Dkt. 58 at 5.

9

        The provisionally certified classes satisfy each of the certification requirements that: (1)

10

the individuals in the settlement Class are so numerous that joinder would be impracticable (618

11

settlement Class Members); (2) there are common questions of law or fact common to the class;

12

(3) Plaintiffs' claims are typical of the claims of the absent settlement class members; and (4)

13

Plaintiffs and their counsel will adequately and fairly represent the interests of the absent

14

settlement class members.  *Hanlon*, 150 F.3d at 1019.  In addition, Plaintiffs have established

15

that the Class is maintainable under Rule 23(b)(3) because common questions "predominate over

16

any questions affecting only individual members," and class resolution "is superior to other

17

available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. Pro.

18

23(b)(3).  Accordingly, Plaintiffs request that the Court finally certify the class for settlement

19

purposes under Rule 23.

20

        **C.    The Court-Ordered Notice Program Is Constitutionally Sound.**

21

        Under Rule 23(e), the Court "must direct notice in a reasonable manner to all Class

22

Members who would be bound by a propos[ed settlement]."  Fed. R. Civ. P. 23(e)(1) Fed. R.

23

Civ. P. 23(e)(1).  Class Members are entitled to receive "the best notice practicable" under the

24

circumstances.  *Burns v. Elrod* (7th Cir. 1985) 757 F.2d 151, 154.  Notice is satisfactory "if it

25

generally describes the terms of the settlement in sufficient detail to alert those with adverse

26

viewpoints to investigate and to come forward and be heard."  *Churchill Vill., L.L.C.,* 361 F.3d at

27

575 (internal citations omitted).  Moreover, notice that is mailed to each member of a class "who

28

can be identified with reasonable effort" constitutes reasonable notice.  *Eisen v. Carlisle &*

16

*Jacquelin* (1974) 417 U.S. 156, 177.  For any certified Rule 23(b)(3) class, the notice must inform Class Members "that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded."  Fed. R. Civ. P. 23(c)(2)(B).

The final Notice, submitted as Exhibit "A" to the Settlement, explains the nature of the action and the terms of the Settlement (including the Settlement Amount, how individual Settlement awards will be calculated, the attorneys' fees to be paid, the claims that will be released).  It also explains how the Class Members may receive a portion of the Settlement, be excluded from the Settlement, or object to the Settlement.  Moreover, the accompanying Payment Information Form, submitted as Exhibit "B" to the Settlement, informed Class Members of their estimated settlement share, the qualifying workweeks used for that calculation, and provided Class Members with information on how they may dispute that calculation if the Class Member felt that the allocation was incorrect.  This information satisfies Rule 23(e).  *See*, *e.g.*, *Villegas 2012 U.S. Dist. LEXIS* 166704, at * 23 (approving a notice containing the same categories of information).

The notice plan provided for in the Settlement and approved by the Court in its October 10, 2024 Order satisfies the notice standard for all persons who were mailed notice.  Class Counsel formatted this Notice in an easy-to-read manner.  The Notice encouraged Class Members to contact the Settlement Administrator or Class Counsel with any questions and provided their names, telephone numbers, and mailing addresses.  Kizirian Decl., ¶¶ 5, 33, Exhibit "A" to the Settlement Agreement.

Accordingly, the Notice and Notice plan fulfilled all requirements of adequate notice and should be duly approved.  *See Torrisi v. Tucson Elec. Power Co*. (9th Cir. 1993) 8 F.3d 1370, 1374-75; Fed. R. Civ. P. 23(c)(2).

///

///

///

///

**Notice of Motion and Motion for Final Approval of Class Action Settlement;**
**Memorandum of Points and Authorities - Case No. 4:22-cv-00587-YGR**

**D.** **Class Counsel Should be Compensated for Their Work from the Common Fund That Has Been Created Only Through Class Counsel's Significant Efforts.**

1.  **Class Counsel's Fee Is Properly Calculated as a Percentage of the Total Class Settlement**

It is well-established that when a litigant's efforts create or preserve a fund from which others derive benefits, the court may spread litigation costs proportionately among all the beneficiaries to compensate those who created the fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund for the benefit of persons other than…his client is entitled to a reasonable attorneys' fee from the fund as a whole."). In *Serrano v. Priest*, 20 Cal.3d 25 (1977), the California Supreme Court held that:

> [W]here a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorneys' fees out of the fund.

*Id.* at 34; *see also Bell v. Farmers Insurance Exchange*, 115 Cal.App.4th 715, 726 (2004) (25% fee awarded from $90 million dollar fund); *Wershba v. Apple Computer*, 91 Cal.App.4th 224, 254 (2001) (recognizing that one method for calculating attorneys' fees in class actions is the percentage of recovery); *Sanders v. City of Los Angeles*, 3 Cal.3d 252, 261, 263 (1970) (affirming award of attorneys' fee based on percentage of recovery).

Indeed, it is an accepted practice in wage and hour class action settlements to award attorneys' fees to Class Counsel based on a total settlement value agreed upon by the parties. *See*, *e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 967-72 (9th Cir. 2003). In fact, courts have made "the percentage-of-the-benefit approach the preferred method for determining fees" in cases like this one. *See Lealao v. Beneficial California, Inc.*, 82 Cal.App.4th 19, 31 (2000) citing *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 379 (9th Cir. 1995); *Paul, Johnson, Alston & Hunt v. Graulty*, 866 F.2d 268 (9th Cir. 1989). This is because the lodestar approach encourages inefficiency and wasteful attorney hours. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("[I]t is widely recognized that the lodestar method creates

18

1   incentives for counsel to expend more hours than may be necessary on litigating a case so as to

2   recover a reasonable fee").

3           Notably, the California Supreme Court reaffirmed the percentage of the recovery method

4   as a basis to determine attorneys' fees in class action cases.  As stated by the Supreme Court in

5   *Laffitte v. Robert Half Intern, Inc.*, 1 Cal.5th 480, 503 (2016):

6           We join the overwhelming majority of federal and state courts in holding that when class
            action litigation establishes a monetary fund for the benefit of the class members, and the
7           trial court in its equitable powers awards class counsel a fee out of that fund, the court
            may determine the amount of a reasonable fee by choosing an appropriate percentage of
8           the fund created. The recognized advantages of the percentage method—including
            relative ease of calculation, alignment of incentives between counsel and the class, a
9           better approximation of market conditions in a contingency case, and the encouragement
            it provides counsel to seek an early settlement and avoid unnecessarily prolonging the
10          litigation. . . .

11          Other courts have declared a preference for the percentage method because deficiencies

12   of the lodestar method "ha[ve] stimulated greater judicial willingness to evaluate a fee award as

13   a percentage of the recovery."  *In re Thirteen Appeals Arising Out of San Juan*, 56 F.3d 295,

14   305-06 (1st Cir. 1995); *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994); *Rawlings v.*

15   *Prudential-Bache Properties, Inc.*, 9 F.3d 513, 517 (6th Cir. 1993); *Matter of Continental*

16   *Illinois Securities Litigation*, 962 F.2d 566, 572 (7th Cir. 1992); *Chun v. Bd. of Trustees of*

17   *E.R.S.*, 992 P.2d 127 (Haw. 2000); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1266-67 &

18   fn.3, 1271 (D.C. Cir.1993) (noting that the lodestar approach "encourages significant elements

19   of inefficiency," by giving attorneys an "incentive to spend as many hours as possible" and "a

20   strong incentive against early settlement"; the percentage of the fund approach "more accurately

21   reflects the economics of litigation practice," and "the monetary amount of the victory is often

22   the true measure of success, and therefore it is most efficient that it influence the fee award";

23   and stating "we join the Third Circuit Task Force and the Eleventh Circuit, among others, in

24   concluding that a percentage-of-the-fund method is the appropriate mechanism for determining

25   the attorney fees....").[6]

26

27   ──────────────
     [6] *Mashburn v. National Healthcare, Inc.*, 684 F. Supp. 679, 695 (M.D. Ala. 1988) ("One of the
     reasons for supporting a percentage fee award is to encourage early settlement of cases," citing
28   H. Newberg, Attorney Fee Awards, § 2.07 at 48-51).

19

**Notice of Motion and Motion for Final Approval of Class Action Settlement;**
**Memorandum of Points and Authorities - Case No. 4:22-cv-00587-YGR**

1    The percentage of the fund method also more accurately reflects the fees counsel deserve

2    and the benefit conferred upon the class in cases, like this one, where the case resolves before

3    class certification or trial. *See Glass v. UBS Financial Services, Inc.*, 2007 WL 221862, at *16

4    (N.D. Cal. 2007) (25% of the $45,000,000 fund awarded; "Class counsel's prompt action in

5    negotiating a settlement … should be fully rewarded"; no lodestar cross check conducted or

6    needed); *Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986) ("The contingent fee uses

7    private incentives rather than careful monitoring to align the interests of lawyer and client. The

8    lawyer gains only to the extent his client gains…The unscrupulous lawyer paid by the hour may

9    be willing to settle for a lower recovery coupled with a payment for more hours. Contingent

10   fees eliminate this incentive and also ensure a reasonable proportion between the recovery and

11   the fees assessed to defendants…At the same time as it automatically aligns interests of lawyer

12   and client, rewards exceptional success, and penalizes failure, the contingent fee automatically

13   handles compensation for the uncertainty of litigation."); *In re M.D.C. Holdings Securities*

14   *Litigation*, 1990 WL 454747, at *9 (S.D. Cal. 1990) ("[T]he results reached here were

15   accomplished in a remarkably short period of time. It is my strong belief that in general the

16   actual amount of recovery, if any, which ultimately goes to plaintiffs in the majority of cases is

17   inversely proportional to the time spent in litigation…And finally, concluding litigation quickly

18   and with a fair result is beneficial to the general public in that it frees the resources of the courts

19   to deal with other matters."); *In re Quantum Health Resources, Inc.*, 962 F. Supp. 1254, 1257

20   (C.D. Cal. 1997) ("As critics have noted, the lodestar method needlessly increases judicial

21   workload, creates disincentive for early settlement, and causes unpredictable results. The court

22   agrees with these criticisms." [internal citations omitted]).

23   Courts have long recognized that a percentage of recovery for attorneys' fees is properly

24   awarded on the basis of the total value rather than the claims payments made. *Boeing*, 444 U.S.

25   at 478, 480-81 (fees of approximately $2,000,000 approved on settlement value of $7,000,000

26   where claims totaled $706,600 or 47% of the total available); *Williams v. MGM-Pathe*

27   *Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (attorney fee award should be based

28   on 33.3% as agreed by the parties based on total recovery value of $4.5 million, though actual

20

1   payout totaled less; "court abused its discretion by basing the fee on the class members' claims

2   against the fund rather than on the percentage of the entire fund or on the lodestar"); *Vizcaino*,

3   290 F.3d at 1049-50 (no abuse of discretion in awarding percentage of the common fund).

4   Accordingly, basing the fee award on the total settlement amount is appropriate and justified

5   under the circumstances.

6              2.      **Class Counsel's Request for 25% of the Common Fund is Reasonable**

7        Class counsel requests $229,500 in attorneys' fees, which constitutes 25% of the Gross

8   Settlement Amount created by their efforts.  Historically, attorneys' fee awards in common fund

9   cases range from 20% to 50% of the fund, depending on the circumstances of the case.

10  Newberg on Class Actions (3rd Ed. 1992), § 14.03; *c.f. In Re Cendant Corp. PRIDES*

11  *Litigation*, 243 F.3d 722, 736 (3rd Cir. 2001) (finding that "most fee award range 'from

12  nineteen percent to forty-five percent of the settlement fund.'").

13  According to Newberg:

14        No general rule can be articulated on what is a reasonable percentage of a common fund.
          Usually 50% of the fund is the upper limit on a reasonable fee award from a common
15        fund in order to assure that the fees do not consume a disproportionate part of the
          recovery obtained for the class, although somewhat larger percentages are not
16        unprecedented.

17  Newberg, § 14.03.

18        A 25% fee award of the Gross Settlement Amount is appropriate in this case.  Courts in

19  the Ninth Circuit have ruled that 25% is the benchmark courts should use as a starting point to

20  determine the percentage of attorneys' fees to award from a common fund (*see Hanlon v.*

21  *Chrysler Corp.*, 150 F.3d 1011, 1029 (1998)), with 20%-30% being "the usual range."  *See*

22  *Black v. T-Mobile USA, INC.*, 219 WL 3323087, *6 (N.D. Cal July 24, 2019), *citing Vizcaino v.*

23  *Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Courts can adjust this 25% upward

24  based on the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill

25  required and quality of the work; (4) the contingent nature of the fee and the financial burden

26  carried by the plaintiff; and (5) awards in similar cases.  *Id.*, citing *Vizcaino*, 290 F.3d at 1048-

27  1050.  Moreover, courts have recognized that "[f]ee award percentages generally are higher in

28  cases where the common fund is below $10 million."  *Alvarez v. Farmers Ins. Exch.*, No. 2017

21

WL 2214585, at *3 (N.D. Cal. Jan. 18, 2017).

Skill Required and Result Achieved. The Settlement achieved here represents a considerable result for the class. The net amount from the $918,000 to be paid to the Class under the proposed Settlement (after payment of Class Counsel's attorneys' fees [$229,500], litigation costs [$19,468.90], Settlement Administration Costs [$17,270], the Service Awards [$10,000 * 4], and LWDA portion of the PAGA allocation [$22,500]), would be $581,761.10. For the 618 Settlement Class Members, the average payout based on this amount would be approximately $941.36 per person. Thus, the Settlement avoids the risks of litigation while ensuring that Settlement Class Members receive substantial consideration for the release of their claims stemming from this suit. Notably, the Settlement also affords relief to Settlement Class Members who likely would not have pursued individual claims against Defendants. Kizirian Decl., ¶ 34.

Plaintiffs' Counsel are highly skilled and experienced in this type of independent contractor misclassification litigation. In Plaintiffs' Counsel's opinion, based on the facts of this suit and given the present state of the law, this settlement represents an excellent value for the class. Where other attorneys may have declined to bring such litigation on a class basis, or perhaps not attempted to challenge Defendants' formal classification of workers as independent contractors, Plaintiffs' Counsel brought such a suit and successfully negotiated and secured a $918,000 settlement on behalf of the class. Kizirian Decl., ¶ 35.

Importantly, as set forth as part of the preliminary approval briefing, this settlement also compares favorably to the settlements in the similar suits of *Matute v. Pilot Air Freight*, Northern District of California Case No. 4:22-cv-00587-YGR, which resulted in a $677.18 per person net settlement award along with a 25% fee award to plaintiff's counsel, and *Henriquez v. DSI Logistics*, Los Angeles County Superior Court Case No. BC714165, which resulted in a $480 per person net settlement award along with a 33% fee award to plaintiff's counsel. Based on these two other results and the skill required of Plaintiffs' Counsel here to pursue litigation such as this, a 25% award of the common fund here is reasonable and should be granted by this Court. Kizirian Decl., ¶ 36.

Risk of Litigation. Plaintiffs allege that Defendants improperly misclassified the Settlement Class Members as independent contractors exempt from minimum wage, overtime, meal and rest period laws, and the wider protections of the California Labor Code and wage orders. Although Plaintiffs believe they have a strong case, further litigation carries numerous risks and obstacles for Plaintiffs and Settlement Class Members, as set forth in detail above in Section VII(A)(1) and incorporated herein. Kizirian Decl. ¶ 37.

Due to these aforementioned risks, Defendants' stance in this litigation may result in no recovery for Plaintiffs and the Putative Class Members, or protracted appeals and significant risks to meaningful recovery for the Settlement Class Members. Consequently, the substantial risk of continued litigation supports an award of the Ninth Circuit's benchmark of 25% of the gross settlement amount in attorneys' fees as Plaintiffs' Counsel have appropriately balanced the desire to keep pushing forward in the hope of a greater settlement with the very real risk that the litigation may develop in a negative way for the Plaintiff Class given the risks outlined above. Kizirian Decl. ¶ 38.

Contingency Fee and Advancement of Costs. In addition, Plaintiffs' counsel advanced all costs in this matter and their fees are entirely contingent in nature. Plaintiffs' counsel has not received any compensation for their services during the two years that this case has been pending. The fact that Plaintiffs' Counsel have received no compensation to date, and in fact even funded the litigation from their own accounts with no guarantee of reimbursement, greatly favors the award of the requested 25% of the common fund in attorney's fees. Kizirian Decl. ¶ 39.

Awards in Similar Cases. Finally, it is notable that California and federal courts have approved numerous attorneys' fee requests in similar cases seeking an equal or greater percentage of the settlement fund than that sought by Plaintiffs here. *Dawson v. Hitco Carbon Composites, Inc.*, 2019 WL 7842550, \*9 (C.D. Cal. November 11, 2019) (awarding 35% of the common fund in a wage and hour action); *Bennett v. SimplexGrinnell LP*, 2015 WL 12932332, at \*6 (N.D. Cal. Sept. 3, 2015) (awarding 38.8% of the common fund in a wage and hour action); *Rabin v. PricewaterhouseCoopers LLP*, 2021 WL 837626, at \*7 (N.D. Cal. Feb. 4, 2021)

23

(awarding 35% of the settlement fund); *In re Ampicillian Antitrust Litigation*, 526 F. Supp. 494 (D.D.C. 1981) (awarding 45% of $7.3 million settlement fund); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412, 420 (S.D.N.Y. 1981) (awarding 36% of the settlement fund).

3.   **The Lodestar Approach Demonstrates that Class Counsel's Attorneys' Fee Request is Fair, Reasonable and Justified Under the Facts of this Case**

The lodestar number is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for the region and for the experience of the lawyer. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  The lodestar number is "presumably reasonable." *Cunningham v. Cnty of L.A.*, 879 F.2d 481, 488 (9th Cir. 1988).

In *Laffitte v. Robert Half Intern, Inc.*, the California Supreme Court ruled that trial courts have the discretion – but are not required to – perform a lodestar cross check to determine the reasonableness of the attorneys' fee award. *Laffitte*, 1 Cal.5th at 506.  If the Court chooses to perform a lodestar analysis, case law is clear the Court is not required to "closely scrutinize each claimed attorney-hour, but ... instead ... 'focus on the general question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys.'" *Id.* at 505, quoting 5 Rubenstein, Newberg on Class Actions (5th Ed. 2015), section 15:86, p. 331; *see also Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) ("[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court"); *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 342 (3d Cir. 1998) (agreeing with district court that **detailed time summaries were unnecessary where, as here, it was merely using the lodestar calculation to double check its fee award**) (emphasis added); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 451 (E.D. Cal. 2013) ("Where the lodestar method is used as a cross-check to the percentage method, it can be performed with a less exhaustive cataloguing and review of counsel's hours.").

///

24

1   Here, the lodestar approach supports the conclusion that the fee award sought by Class

2 Counsel is fair and reasonable.  This is because Class Counsel's lodestar to date amounts to

3 $294,347.50.  Declaration of Michael H. Boyamian ("Boyamian Decl."), ¶ 21.  This amounts to

4 a *negative* multiplier in that Class Counsel are foregoing fees for some of the time that they

5 have expended in pursuit of this matter as Plaintiffs' Counsel's fee request is for $229,500.

6   This is significant because routinely use a multiplier to substantially *increase* the

7 underlying amount of fees billed for by counsel.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1050-51

8 (upholding 28% fee award that constituted a 3.65 multiplier); *id.* at 1052-54 (noting district

9 court cases in the Ninth Circuit ***approving multipliers as high as 6.2***); *McKenzie v. Federal*

10 *Exp. Corp.*, 2012 WL 2930201 at *10 (C.D. Cal. July 2, 2012) (in wage and hour action,

11 approving percentage-based fee award that represented multiplier of 3.2); *Johnson v. Brennan*,

12 2011 WL 4357376, at *20 (S.D.N.Y. 2011) (in wage and hour action, noting that "[c]ourts

13 regularly award lodestar multipliers from ***two to six times*** lodestar") (emphasis added);

14 *Beckman v. KeyBank N.A.*, 293 F.R.D. 467, 481–82 (S.D.N.Y. 2013) (in wage and hour action,

15 approving of ***6.3 multiplier*** in lodestar cross-check analysis); citing *Ramirez v. Lovin' Oven*

16 *Catering Suffolk, Inc.*, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (in wage and hour

17 action, approving of ***6.8 multiplier*** in lodestar cross-check analysis); *Davis v. J.P. Morgan*

18 *Chase & Co.*, 827 F.Supp.2d 172, 184–86 (W.D.N.Y. 2011) (in wage and hour action,

19 approving of ***5.3 multiplier*** in lodestar cross-check analysis); *see also Zeltser v. Merrill Lynch*

20 *& Co., Inc.*, 2014 WL 4816134, at *10 (S.D.N.Y. 2014) (in wage and hour action, approving of

21 ***5.1 multiplier*** in lodestar cross-check analysis and noting "[w]hile this multiplier is near the

22 higher end of the range of multipliers that courts have allowed, this should not result in

23 penalizing Plaintiffs' counsel for achieving an early settlement, particular where, as here, the

24 settlement amount is substantial."); *Maley v. Del Global Techs. Corp.*, 186 F.Supp.2d 358, 371

25 (S.D.N.Y. 2002) (***"modest multiplier" of 4.65*** in wage and hour class action was "fair and

26 reasonable") (emphasis added).

27   These decisions further support Plaintiffs' contention that the amount of fees sought by

28 Class Counsel are reasonable.  Simply put, where courts routinely award multipliers tripling,

25

quadrupling, quintupling, even sometimes sextupling the underlying baseline fees, Class

Counsel's request of 25% of the common fund here, in line with the Ninth Circuit's benchmark,

represents a 0.78 *negative* multiplier, and therefore a discount on the fees that they are claiming

in this litigation.

### a. *The Total Number of Hours Claimed Is Reasonable*

The declarations of Class Counsel unequivocally demonstrate that the hours spent on this

case in order to obtain the important benefits conferred upon Class Members are reasonable.

Boyamian Decl., ¶¶ 17-21; Kizirian Decl., ¶¶ 11-17, 40-45; *see also Perkins v. Mobile Housing

Board*, 847 F.2d 735, 738 (11th Cir. 1998) ("Sworn testimony that, in fact, it took the time

claimed is evidence of considerable weight on the issue of time required in the usual case...").

To deny compensation, "it must appear that the time claimed is obviously and convincingly

excessive under the circumstances." *Id.* The applicant need not detail how each minute was

expended; rather counsel should identify 'the general subject matter of his time expenditures.'"

*Hensley v. Eckerhart*, 461 U.S. 424, 437, n. 12 (1983).

The time Class Counsel expended in pursuit of this matter was necessary to furthering the

interests of the class and securing the instant Settlement. Counsel spent significant amounts of

time in investigating Plaintiffs' claims, researching the working conditions of Plaintiffs and the

Settlement Class Members, and drafting Plaintiffs' pleadings in this matter. Moreover, Class

Counsel spent significant time and resources researching the nature of Defendant Mattress Firm

and Allegiant's operations, examining the amount of control Defendants exercise over the

Settlement Class Members, and the nature of the work of the Settlement Class Members

themselves. Plaintiffs' Counsel examined the current state of class action and independent

contractor misclassification case and statutory law to see how best to tailor their suit to

maximize the chances of success. Kizirian Decl. ¶ 40.

Once the litigation was initiated, Plaintiffs' Counsel worked with all four of the Plaintiffs

to contact other putative class members to begin gathering evidence for their required motion

for class certification. Moreover, with the information provided by Plaintiffs, Plaintiffs'

Counsel vigorously opposed Defendant Allegiant's early motion to dismiss and strike portions

26

1    of Plaintiffs' complaint (Dkt. No. 8), researching the issues being raised by Allegiant in-depth,

2    and providing sufficient information to the Court to secure an opportunity to amend the

3    operative complaint and keep all of their claims in the suit.  Kizirian Decl., ¶ 42.

4        When the Parties agreed to attend a mediation, Plaintiffs' Counsel worked to come up

5    with a list of documents and information they would need in order to have a credible mediation

6    from both Allegiant and Mattress Firm.  Plaintiffs' Counsel spent much time working with and

7    interacting with Defense Counsel in determining what sorts of documents could be gathered and

8    exchanged.  Plaintiffs' Counsel then marshaled the information they had learned in preparing a

9    detailed mediation brief and attending a mediation with Antonio Piazza, Esq. on January 16,

10   2024.  Kizirian Decl., ¶ 44.

11       Finally, once the Parties reached a settlement in principle, Class Counsel negotiated with

12   Defense Counsel as to the terms of the Settlement Agreement.  The Settlement Agreement itself

13   required substantial and protracted negotiations between the Parties as they worked through

14   issues and disagreed on a number of terms.  Once the Settlement Agreement was finalized,

15   Plaintiffs' Counsel prepared a Motion for Preliminary Approval of Class Action Settlement and,

16   after preliminary approval was granted by the Court, have worked with the settlement

17   administrator in order to provide notice of the settlement to Class Members.  Kizirian Decl. ¶

18   44.

19       Throughout this time, Plaintiffs' Counsel have worked with Defense Counsel and the

20   settlement administrator in addressing various issues that have arisen in the administration of

21   the settlement.  In addition, Class Counsel's work in this matter is not done as they field

22   inquiries from Settlement Class Members who reach out for information about the settlement,

23   and as Class Counsel have prepared the instant Motion for Final Approval.  Finally, Class

24   Counsel will attend the final approval hearing and, should the Court grant final approval, will be

25   responsible for shepherding the case through its conclusion by overseeing the disbursement,

26   providing the requisite updates to the Court and the LWDA, and fielding any final inquiries

27   from Class Members.  Kizirian Decl., ¶ 45.

28   ///

27

1       All in all, given the course of this litigation, Class Counsel's work has been necessary

2   and reasonable in pursuit of the interests of the class, and Plaintiffs' Counsel request for 25% of

3   the common fund in compensation for attorney's fees is highly reasonable.

4               **b.   _Class Counsel Are Entitled to Local Market Rates and the Hourly_**

5                     **_Rates Claimed Are Reasonable_**

6       When determining the reasonable hourly rate, the court should consider the rate

7   prevailing in the community for similar work performed by attorneys of comparable skill,

8   experience and reputation.  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir.

9   2008).  For purposes of determining the rate prevailing in the community, the court generally

10  looks at the "forum in which the district court sits."  *Id.*

11      The background of Class Counsel and the reasonableness of their hourly fees are set forth

12  in the declarations of Class Counsel submitted contemporaneously with this motion. These

13  declarations demonstrate that Class Counsel's hourly rates are well within the range for

14  comparable attorneys of their skill and experience. Boyamian Decl., ¶¶ 2-7, 17-21; Kizirian

15  Decl., ¶¶ 2-4, 40-45.

16      The hourly rates of Class Counsel are fully supported by their extensive experience and

17  reputation in litigating wage and hour class, collective, and representative actions in California,

18  as well as other complex actions.  *Id.*; *see also MBNA America Bank, N.A. v. Gorman*, 147

19  Cal.App.4th Supp 1, 13 (2006); *Davis v. City of San Diego*, 106 Cal.App.4th 893, 903 (2003);

20  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)

21  ("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the

22  community, and rate determinations in other cases, particularly those setting a rate for plaintiffs'

23  attorney, are satisfactory evidence of the prevailing market rate.").  Class Counsel's hourly rates

24  commensurate with the prevailing market rates in the greater Los Angeles and Northern

25  California Bay Area for attorneys of comparable experience and skill.  Class Counsel have also

26  been approved at the hourly rates requested by various state and federal courts.  The hourly rates

27  requested are also comparable to the Laffey Matrix.  Thus, the hourly rates requested are

28  reasonable and should be approved.  Boyamian Decl., ¶ 20; Kizirian Decl., ¶ 41.

1

2

c.   *The Substantial Risks and Contingent Nature of this Litigation*
     *Support the Requested Fee Award*

3      Defendants vigorously contested liability, the scope and amount of the claimed damages

4   and the propriety of class certification.  While Plaintiffs and their attorneys believe that they

5   would ultimately prevail on the merits in this litigation at trial, Plaintiffs and their counsel

6   realize the risks in moving against Defendants' positions, as detailed above.  Resolution of these

7   issues through motion practice, at trial and/or on appeal present a risk at each juncture that the

8   class would not be certified and, even if certified, would not recover at trial.  These risks must

9   be considered in assessing the fairness of the settlement, which guarantees a prompt and

10  substantial recovery from Defendants.  The settlement agreement in this case is therefore

11  consistent with the "overriding public interest in settling and quieting litigation" that is

12  particularly true in class action suits.  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th

13  Cir. 1976); Newberg on Class Actions (4th Ed., 2002), § 11.41 (citing cases).

14      Furthermore, Class Counsel risked not only a great deal of time but also a great deal of

15  expense to ensure the successful litigation of this action on behalf of the entire Class.  There

16  was the prospect of the enormous cost inherent in class action litigation, as well as a long battle

17  with two corporate defendants that had retained three premier defense firms.  That prospect has

18  become a reality in other class action litigation.  The expense of protracted litigation is

19  formidable and can run on the tens of thousands if not hundreds of thousands of dollars.

20  Therefore, the risks of litigation undertaken by Class Counsel support the fee requested.

21      The public policy in favor of settlement of class actions and other complex cases applies

22  with particular force in this case.  Certainty of recovery is enhanced by an equitable settlement

23  such as that under consideration in this case.  Accordingly, consideration of the expense, time

24  and risk associated with continued prosecution of this matter weigh in favor of settlement.

25      In addition, this litigation was initiated two years ago and the attorneys' fees were wholly

26  contingent in nature.  Class Counsel's attention to this complex case was undertaken in lieu of

27  work on other cases.  Kizirian Decl., ¶ 39.  The delay Class Counsel has experienced in

28  receiving any compensation in this case requires that Counsel be fairly compensated at the end

29

of the case; otherwise, Class Counsel would not take on such risky litigation.  Indeed, the expectation in class action cases such as this is that Class Counsel would receive several times the amount of their actual lodestar – not just their lodestar.  As that is not reasonable given the gross settlement amount, a request of 25% of the common fund, in line with the Ninth Circuit's benchmark, is highly reasonably and fully warranted in order to fairly compensate Class Counsel for their work.

### d. *Plaintiffs' Request for Reimbursement of Costs as Part of the Fee Award is Reasonable and Proper*

It is well-established that an attorney who has created a common fund for the benefit of the class is to be reimbursed from the common fund for reasonable litigation expenses. *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014).  In wage and hour class actions, courts typically award litigation costs and expenses – including reasonable travel expenses. *Acosta v. Frito-Lay, Inc.*, 2018 WL 2088278, at *14 (N.D. Cal. May 4, 2018).

In total, as set forth in the declarations of counsel to this Court, Class Counsel has incurred an aggregate of $19,468.90 in unreimbursed costs and expenses in prosecuting this case. Boyamian Decl., ¶ 22.

Since the inception of the litigation, Class Counsel have incurred filing fees, travel expenses, etc.  All of these costs and expenses were reasonable and necessary to bring this case to closure.  *Id.*  As one commentator noted, "the prevailing view is that expenses are awarded in addition to the fee percentage."  Conte, Attorney Fee Awards, (2d Ed. 1977) § 2.08 at pp. 50-51.

Courts routinely reimburse plaintiff's counsel for the costs incurred in prosecuting cases on a contingent fee basis.  *See In re Businessland Sec. Litig.*, 1991 WL 427887, at *2 (N.D. Cal. June 14, 1991) and cases cited therein; *In re Warner Communications Sec. Litig.*, 618 F.Supp. 735 (S.D.N.Y. 1985); *In re GNC Shareholder Litig.*, 668 F.Supp. 450, 452 (W.D. Pa. 1987). The recovery of costs is to include all out-of-pocket costs not part of overhead which are typically billed to a client.  *Bussey v. Affleck*, 225 Cal.App.3d 1162, 1166 (1990), *overruled on other grounds*.  Each of the expenses incurred are of the type that would normally be billed to and paid for by the client, such as filing fees, legal research, attorney services, litigation support,

30

mediation fees, travel, food and lodging, and other miscellaneous expenses. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

Since the expenses and costs were incurred by Class Counsel for the benefit of the Settlement Class, the requested Class Counsel Costs Award is reasonable and should be approved.

### E.    Settlement Administration Expenses are Reasonable

Courts regularly award administrative costs associated with providing notice to the class. *Acosta*, 2018 WL 2088278, at *14. The total costs of settlement administration are currently estimated at $17,270. As the settlement notice period is still open, there is the possibility that the third-party administrator runs into an anticipated issue that may further raise this amount. Kizirian Decl., ¶ 46.

Based on Class Counsel's view and experience, this is a reasonable cost for claims administration given the size of the class and the type of case. Kizirian Decl., ¶ 46.

### F.    The Payment to the Class Representative Is Reasonable and Routinely Awarded by Courts

The Class Representatives in this matter seek an incentive award of $10,000 each for bringing this suit, assisting Class Counsel, and agreeing to a broader release as part of the instant settlement. Class Counsel is of the opinion that the incentive award is reasonable and proper and supported by the particular circumstances of this case and the applicable case law. Defendants do not oppose this request.

Courts have long acknowledged that active litigants are entitled to be compensated for bearing the risk and time to represent others. *Lo Re v. Chase Manhattan Corp.*, 19 F.E.P. Cas. (BNA) 1366 (S.D.N.Y. 1979). Where class representatives are provided with special compensation as part of a class settlement, the Court should ensure that it is fair and reasonable. However, "[i]t is the complete package, taken as a whole, rather than the individual component parts, that must be examined." *Officers for Justice v. Civil Service Commission of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982).

///

**Notice of Motion and Motion for Final Approval of Class Action Settlement;**
**Memorandum of Points and Authorities - Case No. 4:22-cv-00587-YGR**

1    Indeed, incentive awards "are not uncommon and can serve an important function in

2    promoting class action settlements." *Sheppard v. Consol. Edison Co. of N.Y., Inc*. U.S.D.C. Case

3    No. 94-CV-0403 (JG), 2002 U.S. Dist. LEXIS 16314, *16 (S.D.N.Y. Aug. 1, 2002); *In re*

4    *Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272-273, fn. 3 (S.D. Ohio 1997) ("[c]ourts

5    routinely approve incentive awards to compensate named plaintiffs for the services they provided

6    and the risks they incurred during the course of the class action litigation"), and cases cited

7    therein.

8    The modest incentive payments to the Class Representatives are intended to recognize

9    their time and efforts on behalf of the Class.  "Courts routinely approve incentive awards to

10    compensate named plaintiffs for the services they provide and the risks they incurred during the

11    course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D.

12    Ga. 2001); *see also* Complex Manual § 30.42, n.763 (noting that such awards "may sometimes

13    be warranted for time spent meeting with class members or responding to discovery").  In the

14    *Coca-Cola* case, the court approved incentive awards of $300,000 to each named plaintiff in

15    recognition of the services they provided to the class by responding to discovery, participating in

16    the mediation process and taking the risk of stepping forward on behalf of the class. *Ingram*, 200

17    F.R.D. at 694; *see also Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 300 (1995)

18    (approving $50,000 participation award).

19    The incentive awards being sought here are justified.  Plaintiffs were invaluable in

20    providing information about Defendants' operations at Mattress Firm's Livermore, California

21    warehouse, meeting with Class Counsel, educating Class Counsel about the nature of the work

22    he performed, and the nature of Defendants' delivery operations.  Plaintiffs cooperated with

23    Class Counsel in answering numerous questions over a series of phone calls, searching for and

24    providing documents to Class Counsel, assisting Class Counsel in understanding the contentions

25    being made by Defendants and analyzing various documents provided by Defendants.  All in all,

26    the four Plaintiffs estimate that they have spent between 25 and 40 hours assisting with this

27    litigation.  Declaration of Christian Decena ("Decena Decl."), ¶¶ 12; Declaration of Hairon

28    Martinez ("Martinez Decl."), ¶¶ 12; Declaration of Miguel Rios ("Rios Decl."), ¶¶ 12;

32

1   Declaration of Rigoberto Godoy ("Godoy Decl."), ¶¶ 12; *see* Boyamian Decl., ¶ 24.

2        Moreover, it should be noted that the Representative Plaintiffs came forward in order to

3   vindicate the rights of other Settlement Class Members despite personal fears of retaliation from

4   their future employers.  In this age, it is not uncommon for employers to conduct background

5   investigations of prospective employees to determine if they have ever been involved in lawsuits

6   with previous employers.  Thus, by stepping forward and lending their name to this lawsuit, the

7   Representative Plaintiffs have risked future employment opportunities and have borne risks that

8   absent Settlement Class Members have not.  Decena Decl., ¶¶ 9-11, 14; Martinez Decl., ¶¶ 9-11,

9   14; Rios Decl., ¶¶ 9-11, 14; Godoy Decl., ¶¶ 9-11, 14.

10       Finally, as a condition of this settlement, the Class Representatives are being asked to

11  provide Defendants with a general release along with a waiver of all claims, known or unknown,

12  pursuant to California Civil Code Section 1542, which they may possess against them.  As this

13  release is much broader than the release required of class members to participate in the

14  settlement, Class Counsel is of the opinion that this clause of the Settlement Agreement also

15  provides significant support for the requested $10,000 service award for the named Plaintiffs.

16  Boyamian Decl., ¶¶ 23-24; Decena Decl., ¶ 15; Martinez Decl., ¶ 15; Rios Decl., ¶ 15; Godoy

17  Decl., ¶ 15; Settlement Agreement, Section VII.

18  **VII.    <u>CONCLUSION</u>**

19       For all of the reasons set forth above, Plaintiffs respectfully request that this Court grant final

20  approval of the class and PAGA settlement, and grant the requested attorneys' fees, costs, service

21  awards, and third-party administrator payment.

22

23   Dated January 24, 2025              **BOYAMIAN LAW, INC.**

24

25                                   By:___/s/ Armand R. Kizirian_____
                                        Armand R. Kizirian
26                                      Attorneys for Plaintiffs CHRISTIAN DECENA,
                                        HAIRON MARTINEZ, MIGUEL RIOS, and
27                                      RIGOBERTO GODOY, and all others similarly
                                        situated
28

**Notice of Motion and Motion for Final Approval of Class Action Settlement;
Memorandum of Points and Authorities - Case No. 4:22-cv-00587-YGR**