UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHRISTIAN DECENA, HAIRON MARTINEZ, MIGUEL RIOS, AND RIGOBERTO GODOY ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,**<br><br>Plaintiffs,<br><br>v.<br><br>**ALLEGIANT FINAL MILE, INC., A FLORIDA CORPORATION; DIVERSE LOGISTICS & DISTRIBUTION, INC., A FLORIDA CORPORATION; MATTRESS FIRM, INC., A DELAWARE CORPORATION; AND DOES 1 THROUGH 25, INCLUSIVE,**<br><br>Defendants. | CASE NO. **4:23-CV-03633-YGR**<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS; AND JUDGMENT**<br><br>Dkt. Nos. 61 |

The Court previously granted a motion for preliminary approval of the Class Action Settlement between plaintiffs Christian Decena, Hairon Martinez, Miguel Rios, and Rigoberto Godoy, and defendants Allegiant Final Mile, LLC ("Allegiant"), Mattress Firm, Inc. ("Mattress Firm"), and Diverse Logistics & Distribution, LLC ("Diverse") on October 10, 2024 (Dkt. No. 58.) As directed by the Court's preliminary approval order, on January 24, 2025, plaintiffs filed their motion for attorneys' fees, costs, and service awards, and final settlement approval. (Dkt. No. 61.) The Court held a hearing and took arguments from the parties on March 25, 2025.

Having considered the motion briefing, the terms of the Settlement Agreement, the arguments of counsel, and the other matters on file in this action, the Court **GRANTS** the unopposed motion for final approval. The Court finds the settlement fair, adequate, and reasonable. The provisional appointments of the class representatives and class counsel are confirmed.

The Motion for Attorneys' Fees, Costs, and Incentive Awards is **GRANTED**. The Court

1  **ORDERS** that class counsel shall be paid $229,500 in attorneys' fees and $19,468.90 in litigation
2  costs and class representative and named plaintiffs shall be paid $10,000 each, for a total of $40,000
3  as an incentive award.

**I.    BACKGROUND**

    **A.    Procedural History**

On March 24, 2023, plaintiffs filed the putative class action complaint against defendants in the Superior Court of California for Alameda County. Plaintiffs, bringing the suit on behalf of "Drivers," "Helpers," and "Contract Carriers" (together, "Delivery Drivers") who performed delivery services for defendants, alleged defendants misclassified its Delivery Drivers as independent contractors. (Dkt. No. 1-1.) Plaintiffs alleged nine causes of action under California state law arising out of this misclassification, including failure to pay minimum wage and overtime compensation. (*Id.*) On June 6, 2023, plaintiffs filed a first amended complaint adding a tenth cause of action under California's Private Attorneys General Act ("PAGA"). Defendant Mattress Firm removed the case to the U.S. District Court for the Northern District of California on July 21, 2023. (Dkt. No. 1.) Plaintiffs' operative second amended complaint, filed on June 16, 2024, alleges the following causes of action:

    (i) failure to pay minimum wage under California Labor Code sections 1182.11, 1194 *et seq*; Industrial Wage Commission ("IWC") Wage Order No. 9; and the Minimum Wage Order;

    (ii) failure to pay overtime compensation under California Labor Code sections 510, 1194 *et seq*, and IWC Wage Order No. 9;

    (iii) reimbursement of employment expenses under California Labor Code section 2802;

    (iv) unlawful deductions from wages under California Labor Code sections 221, 223, and IWC Wage Order No. 9;

    (v) failure to provide meal periods under California Labor Code sections 226.7, 512, and IWC Wage Order No. 9;

    (vi) failure to authorize and permit rest periods under California Labor Code section 226.7 and IWC Wage Order No. 9;

(vii) failure to furnish accurate wage statements under California Labor Code sections 226, 226.3, and IWC Wage Order No. 9;

(viii) waiting time penalties under California Labor Code sections 201-03;

(ix) unfair business practices under California Business and Professions Code sections 17200-09; and

(x) California Labor Code sections 2698 *et seq*. (Dkt. No. 46.)

Prior to class certification, the parties reached an agreement as to a settlement amount on January 16, 2024, with the assistance of an experienced mediator, Antonio Piazza, Esq. However, the parties continued negotiations regarding specific terms into June 2024. (Dkt. No. 54 at 5.) On August 23, 2024, plaintiffs filed their motion requesting preliminary approval of a settlement agreement and the Court preliminarily approved the agreement on October 10, 2024. (Dkt. No. 58.)

The Settlement Agreement, attached hereto as **Exhibit A**, defines the class as:
> all individuals who provided services to Allegiant delivering Mattress Firm products as contract carrier owners, drivers and/or helpers in the State of California; and (b) all contract carrier owners who owned or controlled an entity that contracted directly with Allegiant and provided delivery services delivering Mattress Firm products in the State of California, at any time during the Class Period

("the Settlement Class").[1] (Dkt. No. 61-1, Exhibit 1, at 4.) In its preliminary approval order, the Court conditionally certified the Settlement Class and provisionally appointed Michael H. Boyamian and Armand R. Kizirian as Class Counsel and plaintiffs Christian Decena, Hairon Martinez, Miguel Rios, and Rigoberto Godoy as class representatives, and Simpluris, Inc. as the class administrator. (Dkt. No. 58 at 8, 9.)

**B.    Terms of the Settlement Agreement**

---

[1] The agreement also defines a PAGA class as:
PAGA Group Members: (a) all individuals who provided services to Allegiant delivering Mattress Firm products as contract carrier owners, drivers and/or helpers in the State of California; and (b) all contract carrier owners who owned or controlled an entity that contracted directly with Allegiant and provided delivery services delivering Mattress Firm products in the State of California, at any time during the PAGA Period.
(Dkt. No. 61-1, Exhibit 1, at 8.)

Under the terms of the Settlement Agreement, defendants will pay $918,000[2] into a common settlement fund, without admitting liability. This amount includes attorneys' fees and costs, the cost of class notice and settlement administration, and the class representative's service award,

### 1. *Attorneys' Fees and Costs*

Under the Settlement Agreement, Class Counsel agreed to seek up to $297,000 in attorneys' fees and no more than $25,000 in litigation costs in litigation costs. Class Counsel now seeks fees of $229,500 (25% from the gross settlement amount of $918,000) and litigation costs of $19,468.90. The common settlement fund also includes a provision for $17,270 in settlement administration costs; and up to $10,000 to be paid to named plaintiffs as an incentive award in exchange for a general release of all claims against defendants.

### 2. *Class Relief*

After deductions from the common fund for fees, costs, Labor and Workforce Agency fees, and PAGA allocation, and service incentive awards, approximately $581,761.10 will remain to be distributed among the participating class members. Class members will be paid a pro rata share of the net class settlement amount based on the number of qualifying class workweeks worked. Dividing this amount across the 618 participating class members yields an average recovery of approximately $941.36 per class member. The Agreement provides that no amount will revert to defendants.

### 3. *Cy Pres/Remainder*

The Settlement Agreement provides that when checks mailed to participating class members are not redeemed or deposited within 180 days of disbursement, such funds will be tendered to the California State Controller's Unclaimed Property Fund in the name of the individual Settlement Class Member or PAGA Group Member who did not cash the check.

### C. **Class Notice and Claims Administration**

The Settlement Agreement is being administered by Simpluris, Inc. Following the Court's

---

[2] There are 618 Class Members, which exceeds Allegiant's estimate by 7% (i.e., 2% above the 5% variance provided in the settlement agreement). Accordingly, Allegiant is responsible for paying an additional $18,000 (2% of the $900,000) for a total Gross Settlement Amount funding of $918,000. (Dkt. No. 61 at 1.)

4

1  preliminary approval and conditional certification of the settlement, the Class Administrator mailed
2  notice to 618 class members on November 22, 2024.

3        The Class Administrator also established a settlement website (the "Settlement Website") at
4  https://www.simpluris.com/case-search/, including the settlement notices, the procedures for class
5  members to submit claims or exclude themselves, a contact information page that includes address
6  and telephone numbers for the claim administrator and the parties, the Settlement Agreement, and
7  the signed order of preliminary approval.[3] In addition, the motion for final approval and the
8  application for attorneys' fees, costs, and incentive awards were uploaded to the website after they
9  were filed. The Class Administrator also operated a toll-free number for class member inquiries.

10       Class members were given until February 21, 2025, to object to or exclude themselves from
11 the Settlement Agreement. Out of 618 total class members no persons filed timely requests to opt out
12 of the Settlement Class.

13 **II.    FINAL APPROVAL OF SETTLEMENT**

14     **A.    Legal Standard**

15       A court may approve a proposed class action settlement of a certified class only "after a
16 hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements
17 for class certification. Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, a court need
18 not address whether the settlement is ideal or the best outcome, but only whether the settlement is
19 fair, free of collusion, and consistent with plaintiffs' fiduciary obligations to the class. *See Hanlon v.*
20 *Chrysler Corp.*, 150 F.3d at 1027. The *Hanlon* court identified the following factors relevant to
21 assessing a settlement proposal: (1) the strength of the plaintiffs' case; (2) the risk, expense,
22 complexity, and likely duration of further litigation; (3) the risk of maintaining class action status
23 throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and
24 the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a
25 government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026

---

[3] Although https://www.simpluris.com/case-search/ navigates to the administrator's general webpage, the aforementioned documents are accessible via dropdown menu after searching for the case name in the search box.

(left margin: United States District Court / Northern District of California)

(citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

**B.     Analysis**

***1.     The Settlement Class Meets the Prerequisites for Certification***

As the Court found in its order granting preliminary approval and conditional certification of the settlement class herein, the prerequisites of Rule 23 have been satisfied purposes of certification of the Settlement Class. (*See* Dkt. No. 58.)

***2.     Adequacy of Notice***

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Adequate notice requires that it be: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and that it (iv) meet all applicable requirements of due process and any other applicable requirements under federal law. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Court found the parties' proposed notice procedures provided the best notice practicable and reasonably calculated to apprise Class members of the settlement and their rights to object or exclude themselves. (Dkt. No. 58.) Pursuant to those procedures, the Class Administrator carried

6

out that program. (Dkt. No. 63.) The Class Administrator reports that 64 notices were ultimately undeliverable after an initial 112 notices were returned and re-sent with updated current addresses. (*Id.* ¶ 11.)

Based upon the foregoing, the Court finds that the Settlement Class has been provided adequate notice.

### 3. *The Settlement Is Fair And Reasonable*

As the Court previously found in its order granting preliminary approval, the *Hanlon* factors indicate the settlement here is fair and reasonable and treats class members equitably relative to one another. (Dkt. No. 58.)

The Court finds the reaction of the class was overwhelmingly positive, given the Court received no objections and no opt-outs as of the March 18, 2025 deadline. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

In its preliminary approval order, the Court approved the proposed plan of allocation. (Dkt. No. 58 at 9.)  That plan requires that class members receive a settlement share unless they send an exclusion notice. The Court finds the plan of allocation to be fair and reasonable and to treat class members equitably and therefore approves that plan of allocation.

### 4. *Objections*

No individuals submitted objections. (Dkt. No 63 ¶ 13.)

### 5. *Certification Is Granted and the Settlement Is Approved*

After reviewing all of the required factors, the Court finds the Settlement Agreement to be fair, reasonable, and adequate, and certification of the Settlement Class as defined therein to be proper.

The *cy pres* recipient, the California State Controller's Unclaimed Property Fund, is **APPROVED**.

**III.     MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS**

Attorneys' fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h). Such fees must be found "fair, reasonable, and adequate" in order to be approved. Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* at 963. "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise. *Id.* at 964.

Class Counsel requests an attorneys' fee award of $229,500, which is 25% of the settlement fund. Based on the time records submitted by counsel, the attorneys' fees sought amount to approximately negative 0.78x its lodestar. Defendants do not oppose the fee request.

The Court analyzes an attorneys' fee request based on either the "lodestar" method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Ninth Circuit encourages courts to use another method as a cross-check in order to avoid a "mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654 F.3d at 944–45 (citing *Vizcaino,* 290 F.3d at 1050–51.)

Under the lodestar approach, a court multiplies the number of hours reasonably expended by the reasonable hourly rate. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'"). Under the percentage-of-the-fund method, courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). The benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant

1  factors." *Six (6) Mexican Workers*, 904 F.2d at 1311. When using the percentage-of-recovery
2  method, courts consider a number of factors, including whether Class Counsel "'achieved
3  exceptional results for the class,' whether the case was risky for class counsel, whether counsel's
4  performance 'generated benefits beyond the cash settlement fund,' the market rate for the
5  particular field of law (in some circumstances), the burdens class counsel experienced while
6  litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled
7  on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir.
8  2015) (quoting *Vizcaino*, 290 F.3d at 1047-50. "[T]he most critical factor [in determining
9  appropriate attorney's fee awards] is the degree of success obtained." *Hensley v. Eckerhart*, 461
10 U.S. 424, 436 (1983).

Using the percentage-of-the-fund method, the Court finds the attorneys' fees sought to be reasonable. The Court has also considered a cross-check using the lodestar method.

The lodestar figure is 440 hours at varying rates for a total of $294,347.50. Plaintiffs claim hourly rates that are commensurate with their experience and with the legal market in this district. On the basis of these reasonable hourly rates and amounts, Class Counsel calculate the lodestar to be negative 0.78 of the lodestar. The Court finds that the hours claimed were reasonably incurred and that the rates charged are reasonable and commensurate with those charged by attorneys with similar experience in the market. The Court also finds that Class Counsel represented their clients with skill and diligence and obtained an excellent result for the class, taking into account the possible outcomes and risks of proceeding trial.

Here, the parties estimated the total settlement value to be $918,000. The attorneys' fees requested would come to 25% of this total. This amount meets the 25% benchmark.

Based on the foregoing, the Court finds an award of attorneys' fees in the amount of $229,500 to be fair, reasonable, and adequate.

**B.   Costs Award**

Class Counsel is entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency

matters). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, Class Counsel seeks reimbursement for litigation expenses, and provides records documenting those expenses, in the amount of $19,468.90. The Court finds this amount reasonable, fair, and adequate.

### C. Incentive Award

The district court must evaluate named plaintiffs' requested award using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Here, the plaintiffs came forward to represent the interests of 614 others, with very little personally to gain, as plaintiffs' individual alleged damages were roughly $941.36, assuming average compensation for class members. Plaintiffs aided with investigation, compiled documents, and answered questions related to discovery, regularly corresponded with counsel, and took the substantial risk of litigation which, at a minimum, involves a risk of losing and paying the other side's costs. Because the laws are not self-enforcing, it is appropriate to give incentives to those who come forward with little to gain and at personal risk and who work to achieve a settlement that confers substantial benefits on others. Thus, the Court approves the requested $10,000 incentive award payment per plaintiff for plaintiffs Christian Decena, Hairon Martinez, Miguel Rios, and Rigoberto Godoy.

### IV. CONCLUSION

1    Based upon the foregoing, the motion for final approval of class settlement is **GRANTED**. The motion for attorneys' fees, costs, and service awards is **GRANTED** as follows: Class Counsel is awarded paid $229,500 in attorneys' fees and $19,468.90 in litigation costs. Plaintiffs are granted incentive awards of $10,000 each.

Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement for a period of one year.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that final judgment is **ENTERED** in accordance with the terms of the Settlement, the Order Granting Preliminary Approval of Class Action Settlement filed on October 10, 2024, and this order. This document will constitute a final judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal Rules of Civil Procedure.

The parties shall file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements no later than September 26, 2025. The Court **SETS** a compliance deadline on **October 3, 2025** on the Court's 9:01 a.m. calendar to verify timely filing of the post-distribution accounting.

**IT IS SO ORDERED.**

This terminates Docket No 61.

Dated:  March 25, 2025

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**